# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| GOLD CREST, LLC a California Limited Liability Company,<br><br>                  Plaintiff<br><br>      vs.<br><br>PROJECT LIGHT, LLC, an Ohio Limited Liability Company; PROSPETTO LIGHT, LLC, an Ohio Limited Liability Company; PROSPETTO LIGHTING, LLC, an Ohio Limited Liability Company; SAM AVNY, an Individual; and DOES 1-10, inclusive;<br><br>                  Defendants. | CASE No. 5:19-cv-02921-SL<br>Judge Sara Lioi |

# GOLD CREST'S MOTION FOR SUMMARY JUDGMENT OF PATENT INFRINGEMENT AND VALIDITY OF GOLD CREST'S PATENTS

*[Declaration of Konrad L. Trope filed concurrently herewith]*

# TABLE OF CONTENTS

**Contents**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................2

    1. Gold Crest's Award-Winning Lamp Design Is Covered by its '512 and '735 Patents. ...................................................................................2

    2. Defendant Project Light Sold Its Infringing Knock-Off Lamp With Knowledge Of Gold Crest's Patents. ........................................................4

    3. Defendant's Invalidity and Unenforceability Defenses Are Concocted and Unsupported. ........................................................................................6

    4. Defendant Project Light Cycled Through Four Law Firms to Delay the Resolution of This Case. .....................................................................7

III. DISCUSSION .......................................................................................................8

    1. Defendant's D63 Desk Lamp Directly Infringes Gold Crest's '512 Patent and '735 Patent. ..............................................................................9

    2. The '512 and '735 Patents are Valid and Enforceable. ..........................10

        a) The Marriott Vendor Agreement Did Not Transfer the Rights to the '512 Patent and the '735 Patent to Marriott. ...........................10

        b) The Brooklyn LED Task Light Was Not Publicly Disclosed More Than One Year Before the Filing of Gold Crest's Patents and Thus, Gold Crest's Patents Are Not Invalid. ..................................11

        c) The '512 Patent and the '735 Patent Are Not Invalid As Primarily Functional. ........................................................................................12

        d) The '512 Patent and the '735 Patent Are Not Obvious in Light of the Prior Art. ...................................................................................14

        e) There is No Evidence That Gold Crest Deliberately Misled the Patent Office Regarding the Inventorship of the '512 and '735 Patents. ............................................................................................15

IV. CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ........................................................ 8

*Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988) .................................................................................................................... 12

*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992) ................................... 9

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) ...................................... 1, 9

*Elmer v. ICC Fabricating, Inc.*, 67 F. 3d 1571, 1577 (Fed. Cir. 1995) .......................................... 8

*Fiers v. Revel*, 984 F.2d 1164, 1168, 25 USPQ2d 1601, 1604-05 (Fed. Cir. 1993) ..................... 15

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511 (1871) .................................................................... 9

*In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) ..................................................................... 14

*In re Hardee*, 223 USPQ 1122, 1123 (Comm'r Pat. 1984) .......................................................... 15

*In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) ........................................................................ 14

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) ....................... 9

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322–23 (Fed. Cir. 2000) .................................................................................................................... 15

*PHG Techs., LLC v St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) .................................. 12

*Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2000) ........................................ 12

*Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) ............................. 10

**Statutes**

35 U.S.C. § 102(a)(1) .................................................................................................................... 10

I. **INTRODUCTION**

Having no real defense to its copying of Gold Crest's patented lamp, Defendant Project Light is trying to delay the inevitable by churning through multiple counsel.  Indeed, Defendant Project Light is now on its ***fifth*** law firm, the four previous firms all having withdrawn.  Gold Crest asks this Court to end Defendant's gamesmanship and grant Gold Crest summary judgment of patent infringement and patent validity.

Under the U.S. Supreme Court's *Egyptian Goddess* standard, the test for infringement of a design patent is whether an ordinary observer would be deceived into thinking that the accused design was the same as the patented design.  See *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).  Given that Defendant's lamp is nearly identical to Gold Crest's patented design, Defendant's admission that its lamp is "confusingly similar" to Gold Crest's products establishes infringement.  *See Defendant Project Light Project Light's Responses to Plaintiff's Requests for Admission, at Response No. 23 found at Docket No. 94-2 at Page 6; see also Memorandum Opinion and Order (Resolving Doc No. 94 [Defendant Project Light Project Light's Motion to Withdraw or Amend Its Responses to Plaintiff Gold Crest's RFA's] found at Docket Entry No. 109 at p. 12, footnote 24*.  Indeed, it appears that Defendant Project Light has deliberately confused the consumer by not just copying Gold Crest's lamp design, but also the product trade name.

Furthermore, as an afterthought, Defendant's claims that Gold Crest's patents are invalid fare no better.  Defendant's primary defense—that Plaintiff Gold Crest had assigned its patents to Marriott—was illusory.  Moreover, Gold Crest's lamp design has won awards for its innovative and ornamental design.  Thus, Gold Crest's designs are hardly obvious or functional

1

as Defendant Project Light now claims. Nor is there any evidence or reason that Gold Crest would misidentify the inventor.

Plaintiff Gold Crest also requests an expedited schedule for the resolution of its current motion to bring this case to its proper, but long overdue conclusion.

**II.        BACKGROUND**

Gold Crest designed its "Brooklyn LED Task Light" starting in 2014. It has since won multiple, prestigious awards for its sleek and trendy design. In 2016 and 2017, the U.S. Patent and Trademark Office granted Gold Crest two design patents for its Brooklyn LED Task Light lamp, U.S. Patent No. D769,512 ('512 Patent) and U.S. Patent No. D787,735 ('735 Patent.) *See* Exhibits "1" and "2" to Plaintiff's First Amended Complaint at Docket Entry Nos. 67-1 and 67-2. Impressed with the design, Marriott ordered Gold Crest's patented Brooklyn LED Task Light for several of its hotel properties. *See* Marriott Vendor Agreement ("Vendor Agreement") with Gold Crest's Purchase Order attached as Exhibit "1" to the Declaration of Konrad L. Trope ("Trope Decl.") filed concurrently herewith.

Also impressed with Gold Crest's design—***and despite being aware of Gold Crest's patents***— Defendant Project Light decided to create a "knock off" and sell a competing lamp design to Marriott and others. Defendant Project Light did this with impunity and with the apparent belief that it could evade the Court system.

        **1.        Gold Crest's Award-Winning Lamp Design Is Covered by its '512 and '735 Patents.**

The ornamental design of Gold Crest's Brooklyn LED Task Light is protected by its '512 and '735 Patents. *See* Exhibits "1" and "2" to Plaintiff's First Amended Complaint at Docket

Entry Nos. 67-01 and 67-02. Below are Figures 1 and 2 of the '512 Patent showing the lamp and base:



The '735 Patent is similar, but the patent covers the lamp without the base, as indicated by the dashed outline of the lamp base:



In 2014 and 2015, the Brooklyn LED Task Light won the prestigious Spark Design Award and A'Design Award competions for its innovative and creative design. *See* Exhibits "2" and "3" to Trope Decl.

///

///

///

3

### 2. Defendant Project Light Sold Its Infringing Knock-Off Lamp With Knowledge of Gold Crest's Patents.

In Spring 2017 Defendant Project Light displayed its infringing desk lamp at the "HD Expo" in Las Vegas, Nevada. The Defendant's desk lamp is shown below adjacent the figures from Gold Crest's '512 and '735 Patents:

| Gold Crest's '512 Patented Design | Defendant's Desk Lamp |
|---|---|
| | |
| Gold Crest's '735 Patented Design | Defendant's Desk Lamp |

4



Defendant Project Light subsequently introduced the D63 lamp, a "carbon copy" as seen below:



Defendant Project Light unabashedly admits that its "products are confusingly similar to Plaintiff's products" covered by the '512 and '735 patents. *See Defendant Project Light's*

5

*Responses to Plaintiff's Requests for Admission, at Response No. 23 found at Docket Entry No. 94-2 at Page 6; see also Memorandum Opinion and Order (Resolving Docket Entry No. 94 [Defendant Project Light Project Light's Motion to Withdraw or Amend Its Responses to Plaintiff Gold Crest's RFA's]* found at Docket Entry No. 109 at p. 12, footnote 24.

Indeed, Defendant Project Light has offered no reason why a consumer would not be deceived into believing that it was purchasing a Gold Crest patented product, because that was Defendant's purpose.

Defendant Project Light also admits that Plaintiff Gold Crest served notice in July 2017 after the May 2017 Las Vegas Show, informing Defendant of the '512 and '735 Patents being infringed by Defendant's products. Yet, Defendant Project Light continued to display, offer and sell its infringing D63 desk lamp on its website (www.projectlightinc.com) for the next 18 months until Plaintiff filed suit on August 12, 2019. *See* Docket Entry No. 109 at p. 12, footnotes 22-23.

Indeed, Defendant Project Light sold its infringing lamp, under a confusingly similar model name used by Plaintiff, namely "Brooklyn USB," to Marriott, in direct competition with Gold Crest. Defendant's use of "Brooklyn USB" as a name for its lamp—a clear play on Gold Crest's "Brooklyn LED Task Light" —further indicates Defendant's deliberate intention to deceive Gold Crest's customers.

### 3. Defendant's Invalidity and Unenforceability Defenses Are Concocted and Unsupported.

Defendant Project Light makes several invalidity and unenforceability arguments. All are litigation-inspired creations. Defendant Project Light has repeatedly asserted that Gold Crest

transferred ownership in the design to Marriott even though the Marriott /Gold Crest Vendor Agreement states the opposite.  *See* Exhibit "1" to Trope Decl.

Despite the design awards for Plaintiff's Brooklyn LED Task Light, Defendant Project Light argues that the '512 Patent and the '735 Patent are purely functional as opposed to ornamental.  Again, ignoring the awards demonstrating creativity, Defendant Project Light assert the patents are obvious copies of older designs.

Without having seen the submissions—and contrary to the actual submissions—Defendant Project Light incorrectly speculates that the lamps were submitted to the design award committees more than a year before the patents were filed.  And Defendant Project Light argues that Gold Crest deliberately scammed the Patent Office by misrepresenting the inventorship of the patents even though it had no reason to do so.

None of Defendant's laundry-list of defenses are supported by any evidence.  Nowhere is there a clause transferring ownership in the '512 Patent or the '735 Patent.  *See* Exhibit "1" to Trope Decl.  And the design was submitted to two competitions less than one year before seeking a USPTO design patent.  *See* Exhibits "4" and "5" to Trope Decl.

### 4. Defendant Project Light Cycled Through Four Law Firms to Delay the Resolution of This Case.

Defendant Project Light has now cycled through four law firms since this case was filed in August of 2019 and apparently the last two sets of attorneys withdrew because of ethical conflicts or irreconcilable conflicts with its client/Defendant.   Defendant Project Light originally retained the national law firm of Akin Gump, Strauss, Hauer & Feld in September 2019.  Akin Gump moved to withdraw as counsel **within three months** on December 13, 2019.  *See* Docket Entry No. 30 in 2:19-cv-06982 (C.D. Cal 2019) ("California Case").  Defendant Project Light

7

then switched to LTL Attorneys, LLP and that firm only stayed long enough to file a reply brief in support of Defendant's Motion to Dismiss or Change Venue. LTL Attorneys, LLP then withdrew **within thirty days** in January of 2020 when the case was transferred to this Court. *See* January 17, 2020 Text Entry.

Then, Defendant Project Light retained Hudak, Shunk & Farine in late January 2020. The Farine firm is also Defendant Project Light's regular outside counsel. That firm withdrew **three months later** on April 29, 2020, citing "an irreconcilable breakdown in the attorney-client relationship." Docket Entry No. 60.

Defendant Project Light then delayed obtaining new counsel for **nearly three months**. Finally, in July 2020, the firm of Renner, Kenner, Greive, Bobak, Taylor & Weber was hired. That firm moved to withdraw in February of 2021, again citing "an irreconcilable breakdown in the attorney-client relationship." Docket Entry No. 106.

All of these firms are patent litigation firms with the experience necessary to defend this case, yet none suited Defendant's purpose. Defendant Project Light only today indicated who its **FIFTH** law firm might be, but Defendant's cycling of qualified firms has greatly slowed the resolution of this case to Gold Crest's detriment.

### III. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). This is just such a case.

An issue of fact is material only if resolution of the factual dispute might affect the outcome. *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, a genuine issue for

trial exists only if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, can resolve the material issue in its favor. *Id.* at 250. If, however, "the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

Summary judgment of infringement and that the patents are not invalid is without question appropriate in this case.

### 1. Defendant's D63 Desk Lamp Directly Infringes Gold Crest's '512 Patent and '735 Patent.

Infringement of a design patent is determined by first construing the claim of the design patent and then comparing the properly construed claim to the design of the accused device. *Elmer v. ICC Fabricating, Inc.*, 67 F. 3d 1571, 1577 (Fed. Cir. 1995).

Next, the design of the accused device is compared to the patented device, where:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511 (1871). This is known as the "ordinary observer test." *Egyptian Goddess*, 543 F.3d at 670.

The accused design need not be "identical to the patented design." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992). "[M]inor differences do not prevent a finding of infringement where the overall effect of the designs is substantially the same." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).

Here, Defendant Project Light has simplified that analysis by admitting that its desk lamp is "confusingly similar" to Gold Crest's patented products. *See* Docket Entry No. 109 at p. 12, footnote 24. This is further supported when looking at the distinctiveness of the patented designs

9

in light of the prior art, and then the virtual identical design of Defendant's desk lamp to the patented designs.

Because the design of Defendant's desk lamp is substantially the same as the design of the '518 Patent and the '735 Patent and admittedly "confusingly similar" to an ordinary observer, this Court should grant summary judgment of infringement. No reasonable jury could reach a conclusion other than that Defendant's desk lamp infringes the '512 Patent and the '735 Patent. Accordingly, Gold Crest's motion for summary judgment of direct infringement should be granted.

### 2. The '512 and '735 Patents are Valid and Enforceable.

None of the Defendant's various defenses are so substantial as to overcome the presumption that Gold Crests' patents are valid. "Design patents are presumed valid." *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020). Thus, Defendant Project Light has the burden of proving the '512 and '735 Patents invalid by clear and convincing evidence. *Id*.

#### a) The Marriott Vendor Agreement Did Not Transfer the Rights to the '512 Patent and the '735 Patent to Marriott.

Defendant Project Light's primary defense to infringement was that the Marriott Vendor Agreement transferred ownership in the '512 Patent and the '735 Patent to Marriott. Thus, according to Defendant Project Light, it is free to infringe the '512 and '735 patents at will. In October of 2017, Gold Crest entered into a Vendor Agreement with Marriott (Exhibit "1" to Trope Decl.). Nothing in the Vendor Agreement, however, conveyed ownership of *existing* patent rights to Marriott. It only conveys rights to Marriott, as would be expected, *if* a product was developed for Marriott.

Indeed, the purchase order makes that abundantly clear:

10

> (b) [Marriott] may from time to time provide to Vendor drawings, blueprints, jigs, fixtures, tools, dyes, colors, patterns, sketches, fabrics, samples, materials, designs or other similar proprietary items (collectively "Intellectual Property") and other information for use by Vendor in developing and/or manufacturing Products and/or designs for the Products ("Product Designs") and/or request that Vendor develop such Product Designs based on the Intellectual Property and other information provided by [Marriott]. Vendor hereby acknowledges and agrees that all rights in the Product Designs shall belong to [Marriott].

Exhibit "1" to Trope Decl., p. 13, para. 13(b).

The '512 Patent was filed September 8, 2015. The Marriott Vendor Agreement is dated two years later, October 9, 2017—long after the design was complete. Defendant Project Light has not asserted that Gold Crest designed the product for Marriott or that Marriott provided sketches of the Brooklyn LED Task Light to Gold Crest. Thus, the Vendor Agreement does not convey any rights to Marriott in Gold Crest's design or patents.

Accordingly, the '512 Patent and the '735 Patent are valid and enforceable.

### b) The Brooklyn LED Task Light Was Not Publicly Disclosed More Than One Year Before the Filing of Gold Crest's Patents and Thus, Gold Crest's Patents Are Not Invalid.

Defendant's guess, without support, that Gold Crest must have submitted the applications for the design awards from A'Design and Spark Design more than one year before the priority dates for the '512 and '735 Patents, making them invalid.[1] Project Light's speculation is totally unfounded.

The deadline for the 8th Annual Spark Design awards was September 22, 2014. Gold Crest's submission is dated September 16th, 2014. *See* Exhibit "4" to Trope Decl. The priority date of both the '512 Patent and the '735 Patent is September 8, 2015—*less than one year after the submission date*. Thus, Defendant Project Light guessed wrong.

---

[1] A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if— (A) the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor. 35 U.S.C. § 102(a)(1).

11

Furthermore, Gold Crest did not submit its design for the A'Design Award Competition until January 16, 2015.  Again, Project Light guessed wrong.  *See* Exhibit "5" to Trope Decl.

Defendant Project Light also provided a photo of the packaging of the Brooklyn LED Task Light.  *See* Exhibit "6" to Trope Decl.  Defendant Project Light argues that the copyright date of 2014 on the packaging supports its claim that the lamp was on sale more than one year before the September 8, 2015 priority date for the '512 and '735 Patents.  The copyright is for the label—not the lamp.

Even so, Defendant Project Light provides no evidence that the lamp bearing the copyright was disclosed, sold, or offered for sale before September 8, 2014—one year before the filing date of the '512 Patent.

Defendant Project Light, without question, cannot prove by clear and convincing evidence that the Brooklyn lamp was disclosed more than one year before the priority date of the '512 and '735 Patents.  Accordingly, the '512 Patent and the '735 Patent are not invalid under 35 U.S.C. § 102(a)(1).

        c)        **The '512 Patent and the '735 Patent Are Not Invalid As Primarily Functional.**

Defendant Project Light claims in its Invalidity and Unenforceability Contentions (Exhibit "7" to Trope Decl.) that there is little in the design of the '512 Patent and the '735 Patent that is ornamental, and that the design of the lamp is primary functional.  That assertion makes little sense considering that the ***ornamental*** design of the '512 and '735 Patents was thought to be so creative by the A'Design and the Sparks Design committees to be worthy of recognition and awards.  Neither of the awards were for the functional aspects of the lamps.

In any event, a patented design must be "primarily functional rather than ornamental" in order to be invalid.  *PHG Techs., LLC v St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006).  A design is deemed to be functional when "the appearance of the claimed design is 'dictated by' the use or purpose of the article.  *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2000) (*citing L.A. Gear,* 988 F.2d at 1123).

That a design cannot be primarily functional does not mean that it cannot contain any functional elements whatsoever. *Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988) (holding that "a distinction exists between the functionality of an article or features thereof and the functionality of the particular design of such article or features thereof that perform a function… Were that not true, it would not be possible to obtain a design patent on a utilitarian article of manufacture.")

The functional aspects of a desk lamp are: 1) the components of the lamp that light up and, 2) the components that provide power to the components that light up. In other words, LED bulbs, wiring, and a plug. Pretty much everything else is left to the imagination of the designer. We see that every day by looking at the vast array of designs of lights that we encounter.

Defendant Project Light points to language in Gold Crest's utility patent application, U.S. Application No. 14,848,078, describing the desk lamp as a "long profile, mobile yet stable desk top light," with a "curved section [that] is sized to project the cantilevered portion over a workspace on the support surface (e.g., desk) space forward of [the base]."

Defendant Project Light further references language noting that the "base can have a comparatively small footprint and still achieve appropriate stability requirements" and "the lamppost is attached to the front wall of the base." Lastly, Defendant Project Light notes the language that "the upstanding portion is disposed at a rearward angle and the curved section is sized to project the cantilevered portion over a workspace forward of the base."

All of that is true, but it does mean that function dictated that the lamp must be designed that way. The upstanding portion could have been vertical instead of being "disposed at a rearward angle." The "cantilevered portion" did not need to be cantilevered. Many desk lamps are purely vertical in design. Nor did it need to have a "curved section." Those are ornamental choices by the designer that made the Brooklyn LED Task Light the subject of various awards— not requirements demanded by the function of providing light.

Accordingly, Defendant Project Light cannot meet the clear and convincing standard that the '512 Patent and the '735 Patent are primarily functional and invalid.

### d) The '512 Patent and the '735 Patent Are Not Obvious in Light of the Prior Art.

Defendant Project Light claims in its Invalidity and Unenforceability Contentions (Exhibit "7" to Trope Decl.) that it would be obvious to one of ordinary skill in the art to combine the prior art of the Lim 360 lamp with other prior art to arrive at the design of '512 Patent and the '735 Patent. *See* Defendant's Initial Invalidity and Unenforceability Contentions at Pages 3 and 5, attached as Exhibit "7" to the Trope Decl. *See also* embodiment of Lim lamp found at http://pablo.pablodesigns.com/product/lim. In support of this contention, Defendant Project Light blindly named all of the prior art patents which Plaintiff had identified in its two design patent applications.

In other words, Defendant Project Light never cited or identified any additional prior art beyond that which Plaintiff disclosed to the USPTO examiners in its patent applications. Thus, Defendant Project Light was making a specious argument for which no facts existed.

Moreover, such a finding of obviousness would be in stark contrast to the fact that the design of the '512 and '735 Patents was thought to be innovative enough by both the A'Design Award Committee and the Sparks Design Committee to result in two awards for the creative design of the lamps. Obviously, these organizations—who are indisputably the best evidence of what a "person of ordinary skill in the art" would think—did not believe the design of the Brooklyn LED Task light was obvious.

In any event, before combining the prior art designs, to make an obviousness determination, Defendant Project Light must prove that the design characteristics of the Lim 360 lamp "are basically the same as the claimed design." *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982).

Defendant Project Light premises the bulk of its invalidity contentions by citing to the Lim 360 lamp design developed by Pablo Pardo. The Lim 360 lamp does not have the same design characteristics as Gold Crest's patented Brooklyn LED Task Lamp. Most telling, Lim lacks all of the ornamental design elements that Defendant Project Light chose to copy from Gold Crest's patented design. That should end the inquiry right there.

14

Lim lacks the upstanding portion like the patented design that is sloped at a rearward angle.  The Lim lamp is vertical without a slope.  Lim lacks the curved section of the Brooklyn LED Task Light sized to cantilever the light over the workspace.  Indeed, the lights in Lim would appear to be in the curved section and to cast light at the work surface at an angle.  In sum, there is not enough similarity between Gold Crest's patented design and the Lim lamp to justify combining Lim with the secondary references asserted by Defendants.

In any event, these secondary references may only be used to modify the primary reference—in this case, the Lim lamp—if Defendant Project Light is "so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other."  *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996).  Defendant Project Light does not even advocate that there a reason to suggest combining the secondary references with the Lim lamp.

Defendant Project Light cannot meet the high clear and convincing evidence standard in its attempt to invalidate the '512 Patent and the '735 Patent under 35 U.S.C. § 103.

> e) **There is No Evidence That Gold Crest Deliberately Misled the Patent Office Regarding the Inventorship of the '512 and '735 Patents.**

Defendant Project Light further claims in its Invalidity and Unenforceability Contentions (Exhibit "7" to Trope Decl.) that Gold Crest deliberately failed to name an inventor in the '512 Patent and the '735 Patent, and that the patents are thus invalid.  Defendant Project Light speculates that all of the designers listed in the A'Design Award and Spark Award should have been named in the '512 and '735 Patents.  Defendants, however, offer no proof that the designers listed in the awards invented the patents.

Moreover, even a misidentification of inventorship is correctable and does not render a patent unenforceable unless that misidentification was deliberate.  *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322–23 (Fed. Cir. 2000).  "The district court found that the named inventors *intentionally* presented falsehoods and omissions to the PTO on the subject of inventorship…we cannot conclude that the district court abused its discretion in

15

determining that the behavior of the applicants constituted inequitable conduct." *Id.* (emphasis added).

Here, Defendant Project Light erroneously assumes that the standard for naming an individual on a design award is the same as that required for inventorship by the Patent Office.

That is untrue.[2] Moreover, Defendant Project Light fails to identify any motivation for Gold Crest to essentially commit fraud on the Patent Office. Defendant Project Light cannot meet its burden of proving that Gold Crest misnamed the inventor on the '512 Patent and did that with deceptive intent.

The '512 and '735 Patents are, therefore, enforceable.

## IV. <u>CONCLUSION</u>

Defendant Project Light has repeatedly avoided the consequences of its deliberate and blatantly intentional decision to deceive the consumer by copying Gold Crest's patented lamp for over four years. And this pattern of deception, obfuscation and delay is demonstrated with Defendant's revolving door of attorneys where each set of counsel abandons ship whenever a fundamental factual issue must be proven or disclosed.

Defendant's admission that its products are confusingly similar to Gold Crest's essentially removes all issues of material fact regarding infringement. In light of this admission and a brief comparison of the products, no reasonable juror could find that an ordinary observer would not find Defendant's infringing product substantially similar to the '512 Patent and the '735 Patent. Accordingly, the Court should grant Gold Crest's motion for summary judgment of infringement.

---

[2] The definition for inventorship can be simply stated: "The threshold question in determining inventorship is who conceived the invention. Unless a person contributes to the conception of the invention, he is not an inventor. … Insofar as defining an inventor is concerned, reduction to practice, per se, is irrelevant [except for simultaneous conception and reduction to practice, *Fiers v. Revel*, 984 F.2d 1164, 1168, 25 USPQ2d 1601, 1604-05 (Fed. Cir. 1993)]. One must contribute to the conception to be an inventor." *In re Hardee*, 223 USPQ 1122, 1123 (Comm'r Pat. 1984).

Further, Defendant Project Light has failed to provide sufficient evidence to support its various claims of invalidity by clear and convincing evidence.  Thus, summary judgment of no invalidity is also appropriate.

                                        Respectfully submitted,

Dated:  April 20, 2021                          /s/ Konrad L. Trope
                                        Kyri S. Tsircou (California Bar No. 209905)
                                        Konrad L. Trope (California Bar No. 133214)
                                        *Admitted Pro Hac Vice*
                                        Tsircou Intellectual Property Law PC
                                        515 S. Flower St. Floor 36
                                        Los Angeles, California 90071
                                        Phone (323) 660-9916  Fax (323) 660-9917
                                        kyri@tsircoulaw.com;
                                        ktrope@tsircoulaw.com

                                        Jay R. Campbell  (41293)
                                        David A. Bernstein (93995)
                                        Tucker Ellis LLP
                                        950 Main Avenue, Suite 1100
                                        Cleveland, Ohio   44113
                                        Phone: 216-592-5000  Fax: 216-592-5009
                                        jay.campbell@tuckerellis.com;
                                        david.bernstein@tuckerellis.com

                                        Counsel for Plaintiff Gold Crest, LLC,
                                          a California Limited Liability Company