# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GOLD CREST, LLC, | ) | CASE NO. 5:19-cv-2921 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| PROJECT LIGHT, LLC, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion of plaintiff Gold Crest LLC ("Gold Crest") for partial summary judgment against all defendants[1] on the claims in its amended complaint (Doc. No. 67) for patent infringement and validity of two design patents (Doc. No. 126). Defendants Project Light, LLC ("Project Light"), Prospetto Light, LLC ("Prospetto Light"), Prospetto Lighting, LLC ("Prospetto Lighting") (collectively, the "Corporate Defendants"), and Sam Avny ("Avny") (collectively, "defendants") opposed the motion (Doc. No. 128), and Gold Crest filed a reply (Doc. No. 132). With leave of Court, Gold Crest filed a supplemental brief in support of its motion for summary judgment (Doc. No. 144), defendants filed a supplemental brief in opposition (Doc. No. 150), to which Gold Crest filed a supplemental reply (Doc. No. 152).

For the reasons that follow, Gold Crest's motion for summary judgment is granted in part and denied in part.

---

[1] Gold Crest initially filed the motion only against defendant Project Light LLC. However, Gold Crest directed its reply to all defendants. The Court issued an order stating that it construed Gold Crest's reply as an amendment to assert its motion for partial summary judgment against all defendants and would so proceed unless Gold Crest provided the Court with a reason not to do so by February 15, 2022. (*See* Doc. No. 151.) Gold Crest has not responded to the Court's order. Accordingly, the Court construes Gold Crest's motion as asserted against all defendants and rules accordingly.

## I.  Background

### A.  Factual

The factual background of this action as alleged in the amended complaint has been detailed in the Court's orders ruling on the motion of Project Light to withdraw admissions (Doc. No. 109), and the motion of defendants Prospetto Light, Prospetto Lighting, and Avny to dismiss the amended complaint (Doc. No. 110).  Familiarity therewith is assumed.

Briefly, Gold Crest designed the "Brooklyn LED Task Light" beginning in 2014 and, in 2016 and 2017, the United States Patent and Trademark Office ("USPTO") granted Gold Crest two design patents for the Brooklyn LED Task Light—Design Patent No. US D769,512 ("'512 D. Patent") (Doc. No. 67-1) and Design Patent No. US D787,735 ("'735 D. Patent") (Doc. No. 67-2) (collectively, the "Design Patents").[2] (Doc. No. 126 at 5.[3]) The '512 D. Patent was registered by the USPTO on October 16, 2016, and the '735 D. Patent was registered on May 23, 2017. The Design Patents depict a desk lamp with drawings, and the claim[4] in each is for "the ornamental design for a light assembly, as shown and described." (*See* Doc. Nos. 67-1, 67-2.)

Gold Crest alleges that in 2017, the Corporate Defendants displayed and offered for sale a desk lamp at the "HD Expo" in Las Vegas, Nevada that infringes the Design Patents. (*See* Doc. No. 67 ¶¶ 22–25.) Gold Crest claims that "[a]n ordinary observer familiar with the prior art would be deceived into thinking that the design of the infringing products was the same as" the Design

---

[2] The Design Patents are not attached as exhibits to Gold Crest's motion for summary judgment. Instead, Gold Crest refers the Court to the exhibits attached to the amended complaint.

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

[4] The parties stipulated that no claim construction by the Court was required for the Design Patents. (*See* Doc. No. 129.)

Patents. (*Id.* ¶ 30.) Based upon these factual allegations, Gold Crest asserted nine claims for relief against the defendants and ten (10) John Does.[5] Relevant here are Gold Crest's first and second claims, in which Gold Crest alleges that the Corporate Defendants directly and indirectly infringed the '512 D. Patent and '735 D. Patent, respectively, in violation of 35 U.S.C. § 271.[6] (*Id.* ¶¶ 34–54.) Gold Crest seeks injunctive relief,[7] monetary damages, and attorney fees. (*See id.* at 25–27.)

In response to the amended complaint, defendants asserted affirmative defenses of invalidity and unenforceability of the Design Patents. (Doc. No. 89 at 10; Doc. No. 157 at 10.) Pursuant to the Court's Local Patent Rules, defendants filed their initial invalidity and enforceability contentions ("Contentions"), which are attached to Gold Crest's motion for summary judgment. (*See* Doc. No. 126-8.[8])

## B. Procedural

By way of procedural background, Prospetto Light, Prospetto Lighting, and Avny moved to dismiss Gold Crest's claims against them pursuant to Fed. R. Civ. P. 12(b)(6), which the Court granted in part and denied in part as to all defendants.[9] (*See* Doc. No. 110.) Relevant to the instant

---

[5] With respect to the John Doe defendants 1–10, Gold Crest alleges that these unknown defendants "are in some manner responsible for the wrongs alleged herein" and at all relevant times were the "agent and servant" of the named defendants. (*See* Doc. No. 67 ¶¶ 17–18.)

[6] In its third claim for relief, Gold Crest claims that the Corporate Defendants engaged in illegal passing off and misappropriation of trademarks, trade names, and/or trade dress of plaintiff in violation of 15 U.S.C. § 1125(a). (Doc. No. 67 ¶¶ 55–59.) In claims four through nine, Gold Crest alleges that Avny is an officer or controlling member of the Corporate Defendants who caused or contributed to the Corporate Defendants' alleged infringement and unfair competition with respect to the Design Patents. (*See id.* ¶¶ 60–90.) These causes of action are not the subject of Gold Crest's motion for partial summary judgment.

[7] The parties entered a voluntary stipulated preliminary injunction order. (*See* Doc. No. 105.)

[8] Gold Crest attached the Contentions to its motion for summary judgment without the accompanying exhibits. (*See* Doc. No. 126-1 at 3 ¶ 7.) Defendants separately filed the Contentions with the accompanying exhibits. (*See* Doc. No. 147.)

[9] Project Light did not participate in or separately file a motion to dismiss, but rather answered the amended complaint. (*See* Doc. No. 89.) However, the Court determined that its ruling granting the Rule 12(b)(6) motion as to Prospetto Light and Prospetto Lighting applied equally to Project Light. (*See* Doc. No. 110 at 2 n.4.)

motion, the Court denied the motion to dismiss as pertains to Gold Crest's claims against the Corporate Defendants for direct infringement of the Design Patents but granted the motion to dismiss Gold Crest's claims against the Corporate Defendants for indirect infringement of the Design Patents. (*See id*. at 32–33.) With respect to Avny, the Court denied the motion to dismiss as pertains to Gold Crest's claims for contributory and vicarious liability against Avny for direct infringement of the Design Patents but granted the motion to dismiss Gold Crest's claims for contributory and vicarious liability against Avny for indirect infringement of the Design Patents. (*See id*. at 33–34.)

### C.  Gold Crest's Motion

Gold Crest seeks summary judgment pursuant to Fed. R. Civ. P. 56 on its first and second claims for direct infringement, and the validity, of the Design Patents. (*See* Doc. No. 126 at 4.) Gold Crest claims that defendants' product—the "Brooklyn USB"—infringes the Design Patents because it is confusingly similar in both name and design to the "Brooklyn LED Task Light" embodied in the Design Patents (*See id*. at 5–9.) In support of its motion, Gold Crest attaches the declaration of its lawyer, Konrad L. Trope ("Trope"). (Doc. No. 126-1). The purpose of Trope's declaration is to attest that various documents cited by Gold Crest in support of its motion for summary judgment are true and correct copies. (*See id*. at 2–3.)

In opposition, defendants dispute that the Brooklyn USB infringes the Design Patents and also argue that Gold Crest's infringement claims are unenforceable and that the Design Patents are invalid. Defendants' unenforceability argument is based upon a 2017 vendor agreement between Marriott International Design and Construction Services, Inc. ("Marriott") and Gold Crest. (*See* Doc. No. 126-8 at 8; Doc. No. 128 at 1–3.) Defendants further maintain that the Design Patents

4

are (1) invalid under 35 U.S.C. §§ 102 and 103, (2) invalid because the Design Patents are functional and not ornamental, or their validity is limited to the ornamental design of the Brooklyn LED Task Light exclusive of the functional components, and (3) invalid because the Design Patents do not name all inventors. (Doc. No. 126-8 at 2–8; Doc. No. 128 at 3–13.)

## II.  Discussion

### A.  Design Patents—35 U.S.C § 171

Title 35 U.S.C. § 171 governs patents for designs. Section 171(a) provides that:

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

 "'A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent.'" *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1370–71 (Fed. Cir. 2006) (quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed. Cir. 1993)). "An aspect is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Id.*  at 1371 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)). The drawings in the patent define the patented design. *Id.*

### B.  Summary Judgment Standard of Review

"Summary judgment is as appropriate in a patent case as in any other. Where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). The United States

Court of Appeals for the Federal Circuit applies the law of the regional circuit to a motion for summary judgment. *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016) ("The review of a grant of summary judgment involves an issue not unique to patent law, so we look to the law of the regional circuit in which the district court sits.").

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, summary judgment may only be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248.

Before addressing Gold Crest's motion for judgment that the defendants infringed the Design Patents, the Court will first address the issue of enforceability and then the issue of the validity of the Design Patents.

## C. Enforceability—The Marriott Agreement

In the Contentions and in opposition to Gold Crest's claims for direct infringement of the Design Patents, defendants argue that Gold Crest lacks the right to enforce its infringement claims

because it transferred its rights to the Design Patents to Marriott under a vendor agreement between them dated October 6, 2017 ("Agreement"). (*See* Doc. No. 126-8 at 8; Doc. No. 128 at 1–3.) The Agreement is attached to Gold Crest's motion. (*See* Doc. No. 126-2.)

The Agreement specifies the terms and conditions upon which Marriott will purchase goods and services from Gold Crest, governed by the laws of the State of New York. (*See id*. at 2, 13, ¶ 4.) It contains a provision whereby under certain circumstances, intellectual property will be transferred from Gold Crest to Marriott. (*Id*. at 20–21, ¶ 13.)

On summary judgment, the parties advance opposing views as to whether, under the terms of section 13 of the Agreement, Gold Crest transferred its rights in the Design Patents to Marriott. The parties do not address, but do not dispute, that the laws of the State of New York govern the construction of the terms of the Agreement.

Gold Crest argues that it is entitled to a determination as a matter of law that it did not transfer its rights in the Design Patent to Marriott because the Agreement does not convey ownership of "***existing*** patent rights to Marriott. It only conveys rights to Marriott, as would be expected, ***if*** a product was developed for Marriott." (Doc. No. 126 at 13–14 (emphasis in original) (citing Doc. No. 126-2 at 21, ¶ 13(b)).) In opposition, defendants point to three portions of section 13(b) regarding transfer of ownership to Marriott that they contend support the argument that Gold Crest transferred its *existing* rights in the Design Patents to Marriott because the Agreement conveys rights to Marriott not only if a product is developed for Marriott, but also if a product is *manufactured* for Marriott, which defendants argue was the case when Marriott purchased quantities of the Brooklyn LED Task Light from Gold Crest. (*See* Doc. No. 128 at 1–3.)

The parties' dispute regarding the meaning of the language of section 13 requires the Court to construe the Agreement, but neither side provides the Court with any analysis of the Agreement language under New York law. Section 13 provides in its entirety as follows:

13. Trademarks; Proprietary Products.

(a) Each party acknowledges that the names, marks, logos, insignias, trademarks, trade names, and/or service marks of the other party and/or its Affiliates (respectively, the "Vendor Marks" and "Marriott Marks") are valid and owned by such other party and its Affiliates and that the first party shall have no right to use the Vendor Marks or Marriott Marks, as the context dictates, without the prior written consent of the other party. Neither party shall represent that it has any rights, title or interest in and to the Vendor Marks or Marriott Marks, as appropriate.

(b) *MIDCS may from time to time provide to Vendor drawings, blueprints, jigs, fixtures, tools, dyes, colors, patterns, sketches, fabrics, samples, materials, designs or other similar proprietary items (collectively, "Intellectual Property") and other information for use by Vendor in developing and/or manufacturing Products and/or designs for the Products ("Product Designs") and/or request that Vendor develop such Product designs based on the Intellectual Property and other information provided by MIDCS. Vendor hereby acknowledges and agrees that all rights in the Product Designs shall belong to MIDCS.* Vendor further acknowledges and agrees that the Product Designs are being created or shall be created as a "work-made-for-hire" specially ordered or commissioned by MIDCS for use in connection with the Products, and that, pursuant to the Agreement, MIDCS shall be deemed the author of the Product Designs and shall own all rights, title, and interest throughout the world in perpetuity in and to said Product Designs, including but not limited to the copyright therein (and all renewals, reversions and extensions thereof), and the right to adapt and change the Product Designs and create derivatives thereof, and the right to use such Product Designs in connection with the Products or any other products. *If the Product Designs or any part thereof shall ever be deemed not to be a "work-made-for-hire," Vendor hereby assigns (and shall cause each of its employees or independent contractors who contributed to the designs to assign) to MIDCS, in perpetuity throughout the world, all rights, title and interest (including without limitation the copyright and all renewals, reversions and extensions thereof) in and to the Product Designs.* Vendor further waives (and shall cause each of its employees or independent contractors who contributed to the designs to waive) all rights of "droit moral" or "moral rights of authors" or any similar rights or principles of law which Vendor (or its employees or independent contractors) may now or

hereafter have in the Product Designs. Vendor agrees to execute (or cause to be executed) and deliver to MIDCS any further documents and do any further acts that may be deemed necessary by MIDCS to perfect or protect the title in the Product Designs herein conveyed, or intended to be conveyed, including to enable MIDCS to record such title. Vendor agrees that during the Term of the Agreement and thereafter, Vendor will not directly or indirectly create, use or sell any design that is the same as or substantially similar to the Product Designs. *Vendor represents and warrants that (i) the Product Designs are original designs created by Vendor (or its employees or independent contractors) and to the best of Vendor's knowledge do not  infringe the copyright or other property rights of any third party; (ii) Vendor owns all right, title and interest in the Product Designs herein conveyed, free and clear of any liens, encumbrances, or other third party interests of any kind, and free and clear of any claims or litigation, whether pending or threatened; (iii) Vendor has not transferred and will not transfer to any person other than MIDCS any interest in the Product Designs or the copyright therein or any right to use the Product Designs in any manner; and (iv) any person involved in the creation of the Product Designs is an employee of Vendor or, if not, has assigned all of his rights in the Product Designs to Vendor.* This Section 12 (b) [sic] shall survive termination or expiration of the Agreement.

(Doc. No. 126-2 at 20–21 (emphasis added to indicate portions of section 13(b) that defendants

identify in support of their argument that Gold Crest conveyed its rights in the Design Patents to

Marriott under the Agreement (*see* Doc. No. 128 at 2–3)).)

"The threshold question in a dispute over the meaning of a contract is whether the contract

terms are ambiguous. Under New York law, the meaning of a contract that is unambiguous is a

question of law for the court to decide." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d

Cir. 2000) (citing *K. Bell & Assoc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996)). In

9

assessing ambiguity of a contract under New York law, the Court must consider "the entire contract to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'" *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993)).

Neither side contends that the Agreement language at issue is ambiguous. "In a contract interpretation case, summary judgment is appropriate if the contractual terms are unambiguous and the court can make a ruling as a matter of law." *Popovich v. Sony Music Ent., Inc.*, 508 F.3d 348, 354 (6th Cir. 2007) (applying New York law) (citation omitted). Here, the Court finds that under the unambiguous language of the Agreement, Gold Crest did not transfer its rights in the Design Patents to Marriott.

The Agreement language cited by defendants does not support their argument that Gold Crest transferred its rights in the Design Patents to Marriott. Defendants argue that purchase orders placed by Marriott for the Brooklyn LED Task Light constitutes "other information" provided to Gold Crest in connection with the manufacture of the product and is sufficient under the Agreement to transfer the rights to the products ordered to Marriott. (Doc. No. 128 at 2 ("It is unquestionable that a purchase order constitutes information used by Gold Crest in manufacturing the Products.").)

The Agreement transfers rights to "Product Designs." "Product Designs" is defined in the Agreement as "'Intellectual Property'[] ***and*** other information for use by the Vendor in developing and/or manufacturing Products and/or designs for the Products ('Product Designs')[.]" (Doc. No. 126-2 at 21, ¶ 13(b) (emphasis added).) But products that constitute "Product Designs" under the

10

agreement consist of Intellectual Property provided by Marriott to Gold Crest *and* other information provided by Marriott. In other words, Intellectual Property + other information provided by Marriott = "Product Designs." Therefore, even if a purchase order for the Brooklyn LED Task Light could be construed as "other information" related to the manufacture of the lamps in the Design Patents—which is a stretch—defendants have not identified any intellectual property provided by Marriott to Gold Crest in connection with the manufacture of the Brooklyn LED Task Light that, combined with the purchase order, would satisfy the definition of "Product Designs" subject to transfer under the Agreement. Moreover, taken as a whole, defendants' interpretation of section 13(b) would render that detailed section virtually superfluous if the transfer of rights covered by that section distilled down to: Marriott owns the rights to everything Gold Crest sells to, or designs and produces for, Marriott.

Construing the Agreement under New York law, Gold Crest has the better argument. The Court concludes that defendants have not advanced evidence that raises a genuine issue of material fact that Gold Crest transferred its rights to the Design Patents to Marriott under the Agreement, and, therefore, Gold Crest is entitled to judgment as a matter of law on this issue. Thus, to the extent that the Design Patents are valid, the Court concludes that Gold Crest's claims against defendants for direct infringement of the Design Patents are enforceable.

## D.  Validity of the Design Patents

Patents, including design patents, are presumed valid under 35 U.S.C. § 282. *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) (design patents are presumed valid); *see MRC Innovations, Inc. v. Hunter Mfg., LLP*, 921 F. Supp. 2d 800, 804 (N.D. Ohio 2013). While presumed valid, a design patent may be deemed invalid if, for example, it is obvious under 35

U.S.C. § 103, or under 35 U.S.C. § 102 if the design is anticipated or publicly disclosed more than one year before the filing of the patent application. *See MRC Innovations, Inc.*, 921 F. Supp. 2d at 804–05 (citing 35 U.S.C. § 102 and § 103). In addition to asserting invalidity of the Design Patents under §§ 102 and 103, defendants also contend that the Design Patents are invalid because they are functional and fail to correctly identify all inventors. The presumption of patent validity may be rebutted only by clear and convincing evidence. *Alco Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490, 1498 (Fed. Cir. 1986) (citation omitted).

As the moving party on the issue of validity, Gold Crest bears the initial burden of demonstrating *either* that there are no genuine issues of material fact that the Design Patents are valid, *or* that defendants lack sufficient evidence to carry their burden of persuasion at trial regarding the validity of the Design Patents. *Celotex Corp. v. Catrett*, 477 U.S. 317,325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Yokohama Rubber Co. Ltd., v. Stamford Tyres Int'l PTE LTD*, 07-cv-10, 2010 WL 11519584, at *1 (C.D. Cal. Jan. 19, 2010) (denying patent holder's motion for summary judgment on the issue of patent validity because alleged infringer produced sufficient evidence for a trier of fact to conclude that there is clear and convincing evidence that the patent at issue is invalid as obvious). If Gold Crest satisfies its initial burden, then defendants "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In considering the evidence advanced by both sides in support of their respective positions, the Court may not make credibility determinations or weigh conflicting evidence and must view the facts and all reasonable inferences in a light most favorable to defendants. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (citations omitted).

**1.  35 U.S.C. § 103**

A design patent may be invalid if it is determined to be "obvious" under 35 U.S.C. § 103, which provides that:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

"For design patents, the ultimate inquiry for obviousness 'is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.'" *Spigen Korea Co.*, 955 F.3d at 1383 (quoting *Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1380–81 (Fed. Cir. 2009) (further citation omitted)). "When assessing the potential obviousness of a design patent, a finder of fact employs two distinct steps: first, 'one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design'; second, '[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design.'" *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013) (quoting *Durling v. Spectrum Furniture Co., Inc.,* 101 F.3d 100, 103 (Fed. Cir. 1996) (internal quotations omitted)); *see also Apple, Inc. v. Samsung Elecs. Co.,* 678 F.3d 1314, 1329 (Fed. Cir. 2012) (to determine whether "one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design," the finder of fact must employ a two-step process) (citing among authority *Durling,* 101 F.3d at 103); *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1177 (S.D. Cal. 2021) ("In order to find a

13

design patent invalid as obvious, courts must undertake a two-step test, by finding that (1) a primary reference exists, 'the design characteristics of which are basically the same as the claimed design,' and (2) reasons, such as prior art references, to modify the primary reference's design to create a design that has the same overall visual appearance as the claimed design, also exist.") (quoting *High Point Design LLC*, 730 F.3d at 1311–12).

"Obviousness is a legal conclusion based on four general types of underlying facts which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness." *MRC Innovations, Inc.*, 921 F. Supp. 2d at 805 (citing *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966) (the "*Graham*" factors)); *Spigen Korea Co.*, 955 F.3d at 1383 (the obviousness inquiry is a question of law based on underlying factual findings) (citing *MRC Innovations, Inc. v. Hunter Mfg., LLP,* 747 F.3d 1326, 1331 (Fed. Cir. 2014)); *see also Hupp v. Siroflex of Am., Inc.,* 122 F.3d 1456, 1462 (Fed. Cir. 1997) ("Invalidity based on obviousness of a patented design is determined on factual criteria similar to those that have been developed as analytical tools for reviewing the validity of a utility patent under § 103, that is, on application of the *Graham* factors.") (citations omitted). "Because obviousness presents a question of law for the Court, 'a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts' by simply applying the law to the undisputed facts." *Golden Eye Media USA, Inc.*, 525 F. Supp. 3d at 1178 (quoting *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1353 (Fed. Cir. 2013)). "Summary judgment of obviousness is appropriate if 'the content of the prior art, the scope of the patent claim, and the

level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors.'" *MRC Innovations, Inc.*, 747 F.3d at 1331 (quoting *TriMed, Inc. v. Stryker Corp.,* 608 F.3d 1333, 1341 (Fed. Cir. 2010) (citing *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 427, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007))).

For the reasons discussed below, the Court concludes that, Gold Crest has not carried its initial burden to advance facts under each of *Graham* factors which, if undisputed, would support a legal conclusion that it is entitled to judgment as a matter of law that the Design Patents are valid under § 103.

### The first Graham factor—scope and content of prior art

"[P]rior art references may take the form of other patents, printed publications, or actual items which were in public use more than one year prior to the contested patent application." *Grand Gen. Accessories Mfg. v. United Pac. Indus. Inc.*, 732 F. Supp. 2d 1014, 1024 (C.D. Cal. 2010) (citing *In re Harvey,* 12 F.3d 1061, 1065 (Fed. Cir. 1993)). In the Contentions, Defendants identify the LIM lamp[10] as a primary reference and seven (7) prior art references[11] as secondary references which defendants contend, when combined with the LIM lamp, render the Design Patents invalid as obvious under § 103. (*See* Doc. No. 126-8 at 3–4; Doc. No. 128 at 10–12.)

### Secondary prior art references

As to the seven (7) identified prior art references, Gold Crest criticizes defendants for "blindly [naming] all of the prior patents which Plaintiff had identified in its two design patent

---

[10] The parties variously refer to the LIM lamp and LIM light.

[11] The following design patents are identified by defendants as prior art references in support of their § 103 invalidity contention:  D283,056; D556,363; D618,378; D639,490; D673,321; D681,865; and D759,290. (Doc. No. 126-8 at 3–4.)

applications." (Doc. No. 126 at 17.) But Gold Crest does not attach the applications for the Design

Patents to its motion for summary judgment, nor does it appear that the applications are part of the

record. To the extent that the prior art references cited in the issued patents (that were not cited by

the examiner as indicated by an asterisk) were identified by Gold Crest in the patent applications,

well over seven (7) prior art reference are identified. (*See e.g.* Doc. No. 67-1 at 2–3.)

      Gold Crest further argues that the seven (7) prior art references identified by defendants in

support of their § 103 invalidity contention were considered by the examiner and, therefore,

defendants' § 103 argument based upon these references is "specious." (Doc. No. 126 at 17.)  This

argument is unavailing. "Whether a reference was previously considered by the [USPTO], the

burden of proof is the same: clear and convincing evidence of invalidity. … As the Supreme Court

explained in *i4i,* there is no heightened burden of proof when a reference was previously

considered by the [USPTO], and no lowered burden of proof if a defendant raises a new reference

or argument during litigation. . . . The burden does not suddenly change to something higher—

'extremely clear and convincing evidence' or 'crystal clear and convincing evidence'—simply

because the prior art references were considered by the PTO. In short, there is no heightened or

added burden that applies to invalidity defenses that are based upon references that were before

the Patent Office. The burden is always the same, clear and convincing evidence." *Sciele Pharma*

*Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (citing *Microsoft Corp. v. i4i Ltd. P'ship,*

564 U.S. 91, 101–02, 110–11, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ("new evidence

supporting an invalidity defense may 'carry more weight' in an infringement action than evidence

previously considered by the [USPTO]")); *see also Hickory Springs Mfg. Co. v. R & D Plastics of*

*Hickory, Ltd.*, No. 5:14-cv-93, 2015 WL 4430219, at *4 (W.D. N.C. July 20, 2015) ("'It may be

harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered. Importantly, the question whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder.'") (quoting *Sciele Pharma Inc.,* 684 F.3d at 1260–61).

### Primary reference – LIM lamp

Gold Crest also contends that even if the prior art identified by defendants were not, in Gold Crest's word, "specious," defendants' selection of the LIM light as a primary reference (which combined with the seven (7) prior art references renders the Design Patents obvious under § 103) fails because defendants cannot prove "that the design characteristics of [Lim lamp] 'are basically the same as the claimed design.'" (Doc. No. 126 at 17 (quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) and citing Doc. No. 126-8, website link[12] to the LIM lamp).)

The Contentions describe the LIM lamp[13] as follows:

> The Pablo LIM has two embodiments of interest. Both are an "ultra-slim LED task light" or table lamp. They both have a slim, curved, aluminum arm with LED's in a horizontal section curvedly interconnected with a vertical section that attaches to and extends from a base weighted in the first embodiment and maintained behind the vertical arm in a first embodiment. In the second embodiment, the vertical arm is rotatably attached to a flat base such that the base may assume a position behind the vertical arm section, in front of the vertical arm section, or anywhere in between, as a matter of choice. In the first embodiment, the base is substantially upstanding of the same width as the vertical arm section. In the second embodiment, the

---

[12] http://pablo.pablodesigns.com/product/lim. The website describes the LIM lamp as an "ultra-slim LED task light" with an L shaped arm that "discretely" conceals "a continuous array of high-output, energy efficient LEDs[.]"

[13] Exhibit 10 to the Contentions depicts the LIM light described in the Contentions and is found at Doc. No. 147-11. According to the record, which Gold Crest does not dispute, the LIM lamp received an interior design award in December 2009 as a "multi-purpose, multi-task LED lighting platform whose simple elemental structure can be reconfigured and applied to address multiple lighting requirements across a variety of applications within various markets to include: contract office, institutional, hospitality and residential." (Doc. No. 147-11 at 3.)

vertical section may be connected to a vertical piece of the same width as the vertical arm section, and have a tapered top surface and a USB port.

(Doc. No. 126-8 at 4.)

Defendants contend this design is "basically the same" as the lamps in the Design Patents.

Gold Crest argues that the LIM lamp does not have the same design characteristics as the Brooklyn LED Task Lamp and "lacks all of the ornamental design elements that [defendants] chose to copy from Gold Crest's patented design," though Gold Crest does not specify the ornamental design elements defendants allegedly copied. (Doc. No. 126 at 17.)

In support of its motion for judgment on defendants' § 103 validity defense as pertains to the primary reference, Gold Crest argues:

> Lim lacks the upstanding portion like the patented design that is sloped at a rearward angle. The Lim lamp is vertical without a slope. Lim lacks the curved section of the Brooklyn Task Light sized to cantilever the light over the workspace. Indeed, the lights in Lim would appear to be in the curved section and to cast light on the work surface at an angle. In sum, there is not enough similarity between Gold Crest's patented design and the Lim Lamp to justify combining Lim with the secondary references asserted by Defendants.

(*See id*. at 18.)

In opposition, defendants contend that the design of the LIM lamp is "basically the same" as the Brooklyn LED Task Light embodied in the Design Patents and, "[a]t the time of the purported invention of Patent D769,512 it would have been obvious to a designer skilled in the art of table lamps to provide the slim, curved arm of the first embodiment of LIM extending from the front of a base substantially the same width as the arm, leaving the work space between the horizonal arm containing LEDs to be unencumbered." (Doc. No. 128 at 10.)

In order to serve as a primary reference in a § 103 obviousness analysis, the patented design and the primary reference need not be identical; "if the designs were identical, no obviousness analysis would be required." *MRC Innovations, Inc.,* 747 F.3d at 1333. In order to serve as a primary reference, the design characteristics of the design at issue and prior art must be create "'basically the same' overall visual impression[.]" *Id.* at 1332–33 (the district court did not err in finding that the design characteristics of the patented pet jersey at issue created basically the same overall visual impression as the prior art where both designs contain the same overall shape, similar fabric, and ornamental stitching).

The primary differences identified by Gold Crest in the design characteristics of the Design Patents and the LIM lamp are that the vertical portion of the LIM lamp does not have a rearward slope as in the lamps depicted in the Design Patents and that the location of the LED lights may be different. But even though the LIM lamp is not identical to the lamps depicted in the Design Patents, the slight differences between the identified by Gold Crest are an insufficient basis upon which this Court may conclude as a matter of law that there is no genuine dispute of material fact as to whether the overall visual impression of two lamps are "basically the same." *See id*. at 1333 (citing *Jore Corp. v. Kouvato, Inc*., 117 F. App'x 761, 763 (Fed. Cir. 2005) (finding prior art drill bit to be a primary reference despite containing a smooth cylindrical shaft rather than the grooved hexagonal shaft of the claimed design); *In re Nalbandian*, 661 F.2d 1214, 1217–18 (CCPA 1981) (finding tweezer design obvious in light of prior art references that contained vertical rather than horizontal fluting and straight rather than curved  pincers)); *see also Covves, LLC, v. Dillard's, Inc*., 2:18-cv-8518, 2019 WL 8227455, at *4  (C.D. Cal. Dec. 20, 2019) (finding that the P&P Float, though not identical to the unicorn shaped drink float in the design patent at issue, was a

satisfactory primary reference where both have S-shaped tails, the angle formed by the nose, head, and neck of both is L-shaped and, although the P&P float does not have a protruding mane or ears and has a more square-shaped head, both floats created "basically the same" visual impression of a "minimalist, unicorn-shaped drink float" and "[o]nly minor modifications would be required to make the P&P Float look like the [design patent at issue]").

Here, the Court concludes that there are sufficient similarities between the Design Patents and the LIM lamp that a reasonable jury could determine that the two create the same overall visual appearance and, if so, a factfinder must determine the weight to be given to the secondary prior art references identified by defendants and considered by the USPTO. *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1340 (Fed. Cir. 2019) ("To determine whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design, the fact finder must first find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design"[,] that is to discern the visual impression created by the patented design as a whole and determine whether the primary reference creates basically the same visual impression, which related secondary references may then be used to modify) (internal quotation marks omitted) (citing *Apple, Inc.*, 678 F.3d at 1329; *Durling*, 101 F.3d at 103).

Accordingly, the Court concludes that there are genuine issues of fact concerning the first *Graham* factor as to whether the Design Patents are invalid under § 103.

### The second Graham factor—level of ordinary skill in the art

"The determination of the level of ordinary skill in the art is an integral part of the *Graham* analysis."[14] *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666 (Fed. Cir. 2000) (citing *Custom Accessories Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d. 955, 962 (Fed. Cir. 1986) ("Without [a determination of the level of ordinary skill in the art], a district court cannot properly assess obviousness because the critical question is whether a claimed invention would have been obvious at the time it was made to one with ordinary skill in the art.") (internal citation omitted)). "Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field." *Id.* at 666–67 (citation omitted).

---

[14] In opposing Gold Crest's motion for judgment that the Design Patents are valid under § 103, defendants contend that the ordinary observer test, rather than the ordinary designer test, applies. (*See* Doc. No. 128 at 6.) In *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009), the Federal Circuit stated that "[f]or design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference. Once that piece of prior art has been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art." Citing *Int'l Seaway Trading Corp*, many district courts have applied the ordinary observer test to their analysis of patent invalidity under § 103. However, in *High Point Design LLC*, 730 F.3d at 1313 (collecting cases), the Federal Circuit found that use of the ordinary observer rather than the ordinary designer was "contrary to the precedent of this court and our predecessor court" and found that "the district court erred in applying the ordinary observer standard to assess the obviousness of the design patent at issue." *High Point Design LLC*, 730 F.3d at 1313 & n.2 ("We do not believe our decision in *International Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1240 (Fed. Cir. 2009), cited by the district court, compels a contrary conclusion. The *International Seaway* court may in fact have had the "designer of ordinary skill" standard in mind when it used the term "ordinary observer." In any event, the court could not rewrite precedent setting forth the designer of ordinary skill standard. *See Vas–Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991); *Newell Cos., Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 765 (Fed. Cir. 1998).").

Other than proclaiming their disagreement with each other as to whether a designer skilled in the art of table lamps would find the lamps depicted in the Design Patents to be obvious in light of the LIM lamp and prior art references, neither Gold Crest nor defendants address any of the factors that may be considered in determining the nature of the skills such a person would possess or offer any expert or other evidence in that regard. The LIM light won an interior design award in December 2009. Does such an award suggest that a person of ordinary skill in the art in this matter requires an associate's, bachelor's, or master's degree in interior design, fine arts, or perhaps architectural lighting?

The A'Design award won by Gold Crest's Brooklyn LED Task Light in 2014 – 2015 describes the goals and challenges and innovations of the Brooklyn light. The goal of the Brooklyn LED Task Light was to achieve high design and "[illumination] using the most innovative technology. The Brooklyn's usage of light panel technology ensures the light it casts is soft, smooth, and evenly distributed[] . . . and incorporates revolutionary LED light panel technology . . . One of the most challenging obstacles in the realization of the design was ensuring the base of the product maintained its diminutive form while providing adequate support and stability for the light. This challenge was overcome by molding weights inside the base that fit around the electronics in the base, allowing the base to maintain its form while accommodating additional weight and lowering the light's center of gravity." (Doc. No. 126-3 at 3.)  In this case, does the person of ordinary skill in the art[15] in this matter require an associate's, bachelor's, or master's degree in industrial design, electrical engineering, product or furniture design?

---

[15] Gold Crest states in conclusory fashion that the A'Design award committee thought the Design Patents were "innovative enough . . . to result in [an award] for creative design of the lamps" . . . and is "undisputably the best evidence of what a 'person of ordinary skill in the art' would think [and] did not believe the Brooklyn LED Task Light was obvious." (Doc. No. 126 at 17.) This argument does nothing to identify the education or qualifications of a person

The Brooklyn LED Task Light also won a Spark Design Award, which, like the A'Design award, is a juried competition whose award criteria is not based upon the legal criteria for obviousness, but "dedicated to recognizing designs that make the world a better place." (*See* Doc. Nos. 126-4 at 4; 126-5 at 3.) In that case, does a person of ordinary skill in the art require a degree in the humanities?

Neither party addressed, let alone established, that there is no genuine dispute of material fact as to the level of ordinary skill in the pertinent field under the *Graham* analytical framework for validity under § 103. "Without [a determination of the level of ordinary skill in the art], a district court cannot properly assess obviousness because the critical question is whether a claimed invention would have been obvious at the time it was made to one with ordinary skill in the art." *Custom Accessories Inc.,* 807 F.2d. at 962.

### Third and fourth Graham factors

Given that the Court has concluded that a factfinder must make the underlying factual determinations concerning the first and second *Graham* factors before a determination can be made regarding the validity of the Design Patents under § 103, there is no need for the Court to extensively address the third and fourth *Graham* factors (the differences between the claimed invention and prior art, and objective evidence of non-obviousness, respectively). Suffice it to say that as with the first and second *Graham* factors, Gold Crest, the moving party, has neither adequately addressed these factors nor established that there is no genuine dispute of material fact

---

of ordinary skill in the art in this matter. First, the attachments to Gold Crest's motion indicates that the A' Design competition is adjudicated by a design award jury composed of multiple individuals (*see* Doc. No. 126-3 at 4), and Gold Crest does not provide the education, training, or qualifications of any of these individuals. Moreover, there is no indication that the design award jury applies, as their award standard, the legal standard for obviousness under § 103.

and that Gold Crest is entitled to judgment as a matter of law that the Design Patents not invalid

as obvious under § 103.

### 2.  35 U.S.C. § 102

Defendants assert in the Contentions and argue in opposition to Gold Crest's motion that

the Design Patents are invalid under § 102[16] both as anticipated and under the statutory bar.

Under § 102 (Conditions for patentability; novelty):

> **(a) Novelty; Prior Art.**--A person shall be entitled to a patent unless—
>
>> **(1)** the claimed invention was patented, described in a printed
>> publication, or in public use, on sale, or otherwise available to
>> the public before the effective filing date of the claimed
>> invention; or
>>
>> **(2)** the claimed invention was described in a patent issued under
>> section 151, or in an application for patent published or deemed
>> published under section 122(b), in which the patent or
>> application, as the case may be, names another inventor and was
>> effectively filed before the effective filing date of the claimed
>> invention.
>
> **(b) Exceptions.**—
>
>> **(1) Disclosures made 1 year or less before the effective filing date
>> of the claimed invention.**--A disclosure made 1 year or less before
>> the effective filing date of a claimed invention shall not be prior art
>> to the claimed invention under subsection (a)(1) if--
>>
>>> **(A)** the disclosure was made by the inventor or joint inventor
>>> or by another who obtained the subject matter disclosed
>>> directly or indirectly from the inventor or a joint inventor; or
>>> **(B)** the subject matter disclosed had, before such disclosure,
>>> been publicly disclosed by the inventor or a joint inventor or

---

[16] Section 102 was amended by the America Invents Act ("AIA"). The Design Patents were filed after the effective date of the AIA. *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1318 (Fed. Cir. 2020), *cert. denied,* 141 S. Ct. 1377, 209 L. Ed. 2d 122 (2021) (Congress amended 35 U.S.C. § 102 when it passed the Leahy-Smith America Invents Act ("AIA") and those changes applied to patent applications filed on or after September 16, 2012.); *see also Biogen Idec MA, Inc. v. Japanese Found. for Cancer Research*, 38 F. Supp. 3d 162, 163 (D. Mass. 2014) (The AIA became law on September 16, 2011, and its implementation was phased in, going into effect on September 16, 2012, or March 16, 2013), *aff'd sub nom. Biogen MA, Inc. v. Japanese Found. for Cancer Rsch.*, 785 F.3d 648 (Fed. Cir. 2015).

another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor.

Under § 102, a person is entitled to a patent unless the invention was patented or described in a printed publication more than one year before the application date of the patent at issue. The application date for the '512 D. Patent was September 8, 2015, and the application date for the '735 D. Patent was October 14, 2016. (*See* Doc. No. 67-1 at 2; Doc. No. 67-2 at 2, respectively.) Defendants assert that the Brooklyn LED Task Light, embodied in the Design Patents, was publicly disclosed more than one year prior to the application date for the '512 D. Patent.

In support of this invalidity argument, defendants cite Exhibit 1 to the Contentions, which depicts an image of the Brooklyn LED Task Light on an A'Design competition webpage indicates that the "Image Credits" of the Brooklyn LED Task Light as follows: "LUX by Mighty Bright, 2014." (*See* Doc. No. 126-3 at 3; Doc. No. 147-2 at 2.) Defendants also cite in support Exhibit 2 to the Contentions. Exhibit 2 is a series of photographs of the packaging box for the Brooklyn LED Task Light depicting images of the lamp and a label, which is not separately applied but part of the printed packaging box, that bears a copyright date of 2014. (*See* Doc. No. 126-7 at 5; Doc. No. 147-3 at 4; *see also* Doc. No. 128 at 3–4; Doc. No. 150 at 2.)

In its motion for summary judgment as to validity under § 102, Gold Crest does not address the 2014 date of the "Image Credits," but contends that the 2014 copyright date on the packaging is on the label, not the lamp, and that defendants have not otherwise offered evidence that the lamp bearing the copyright was disclosed or offered for sale more than one (1) year prior to the '512 D. Patent application date of before September 8, 2015. (Doc. No. 126 at 14–15.) But defendants argue that the printed packaging with color graphics and product photos of the Brooklyn LED Task

Light and a copyright date on the packaging of 2014 raises a genuine issue of fact as to when in 2014 Gold Crest disclosed Brooklyn LED Task Light to a photographer and printer and contractor to photograph the lamp, layout the packaging design, and produce the packaging. (Doc. No. 128 at 4 (citing 126-7).)

Construing the facts and all reasonable inferences in a light most favorable to defendants, Gold Crest has not established that there is no genuine dispute of fact as to when the photographs were taken and packaging was designed and produced in 2014 for the Brooklyn LED Task Light, whether in the course of that process the lamp or images of the lamp were accessible or otherwise available to the public, and whether that occurred more than one (1) year prior to the application date of September 8, 2015. While public accessibility and disclosure to the public is a question of law, the Court must first consider underlying facts which are not available here and must be determined by a factfinder, such as (1) what steps and activities were required to ultimately produce the packaging depicting the Brooklyn LED Task Light; (2) when did the activities take place regarding the photographing, design, and production of the lamp packaging; (3) who was involved in those activities and where did they take place; (4) were those involved subject to confidentiality agreements. *See e.g.*, *Dorman Prod., Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663, 679 (E.D. Pa. 2016), *as amended* (Oct. 17, 2016); *see also Bergstrom v. Sears, Roebuck & Co.*, 457 F. Supp. 213, 222–23 (D. Minn. 1978) (although fact sheet and two photographs of subject tubular fireplace grate constituted printed publications and although their submission to advertiser's representative and writer of weekly article on new consumer inventions occurred more than one year prior to filing date the printed publication bar was not applicable where such items were not accessible to the public before the critical date), *aff'd,* 599 F.2d 62 (8th Cir. 1979).

*Anticipation*

A patent may also be invalid under § 102 because it is anticipated by prior art and, therefore, not novel. Like the issue of patent infringement, the ordinary observer test applies to the issue of anticipation. *Samsung Elecs. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432, 196 L. Ed. 2d 363 (2016) (stating ordinary observer test in the context of infringement) (citation omitted); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in *Egyptian Goddess* that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.") (referencing *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 678 (Fed. Cir. 2008 (en banc)). A design patent is anticipated if, "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same[]'" considering the design as a whole. *Samsung Elecs. Co., Ltd.*, 137 S. Ct. at 432 (quoting *Gorham Mfg. Co. v. White,* 8l U.S. 511, 528, 20 L. Ed. 731 (1872)); *Int'l Seaway Trading Corp.*, 589 F.3d at 1243 ("the ordinary observer test requires consideration of the design as a whole") (citations omitted). "The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Corp.*, 589 F.3d at 1243 (citations omitted).

In opposing Gold Crest's motion for judgment on the issue of validity, defendants contend that the Design Patents are not novel because they are anticipated by the LIM light and the following prior art: U.S. Patent No. D556,363; U.S. Patent No. D618,378; U.S. Patent No.

D639,490; U.S. Patent No. D673,321; U.S. Patent No. D681,865; and U.S. Patent No. D759,290. (*See* Doc. No. 128 at 6–7; Doc. No. 147-4[17]–147-10.) Gold Crest's response to defendants' detailed comparisons of the prior art cited in support of their anticipation defense and argument that the ordinary observer would find that the prior art anticipates the Design Patents (*see* Doc. No. 128 at 7–10) is that "[t]his is clearly untrue[,]" and Gold Crest repeats the twin defenses that the prior art cited by defendants in support of anticipation was previously considered by the USPTO and that the design juries for the Spark and A'Design awards "did not believe the design of the Brooklyn LED Task light was anticipated or obvious." (Doc. No. 132 at 5–6.)

The Court has already determined that consideration of prior art by the USPTO is not dispositive of patent validity. *Sciele Pharma Inc.*, 684 F.3d at 1260 (citing *Microsoft Corp.,* 564 U.S. at 101–02). And Gold Crest's argument that the award juries satisfy the legal criteria of the ordinary observer for the purpose of anticipation is as unavailing as its argument that these same juries also satisfy the legal criteria for an individual of ordinary skill in the art for the purpose of obviousness.

Design patent anticipation requires a showing two designs are "substantially the same." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015) (citing *Door–Master Corp. v. Yorktowne, Inc.,* 256 F.3d 1308, 1312–13 (Fed. Cir. 2001) (applying design patent infringement test from *Gorham Mfg. Co.,* 81 U.S. at 528 as the test for anticipation)). Anticipation is a question of fact. *Int'l Seaway Trading Corp.,* 589 F.3d at 1237.

---

[17] Defendants depict U.S. Patent No D. 283,056, but do not list that patent number, as anticipating the Design Patents. (*See* Doc. No. 128 at 7.)

Gold Crest, not defendants, has moved for summary judgment on the validity of the Design Patents. On summary judgment, the Court must view the prior art advanced by defendants in a light most favorable to defendants and draw all reasonable inferences in their favor. In viewing the prior art that defendants argue anticipate the Design Patents, although it is somewhat of a close call, the Court cannot conclude as a matter of law that *all* of defendants' prior art references offered in opposition to Gold Crest's motion do not anticipate the Design Patents, and that a reasonable jury could determine that one or more of defendants' prior art references anticipates the Design Patents.

### 3. Functionality

Design patents protect "any new, original and ornamental design for an article of manufacture[.]" 35 U.S.C. § 171. "If the patented design is primarily functional rather than ornamental, the patent is invalid." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010) (citing *Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1188 (Fed. Cir. 1988) (citing 35 U.S.C. § 171)). "However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." *Id.* at 1294 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.")); *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("[A] design may contain both functional and ornamental elements, even though the scope of a design patent claim 'must be limited to the ornamental aspects of the design.'") (quoting *Ethicon Endo–Surgery, Inc., v. Covidien, Inc.,* 796 F.3d 1312, 1333 (Fed. Cir. 2015)).

The design of an article of manufacture "is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear, Inc.*, 988 F.2d at 1123 (quotation marks and citations omitted). "An aspect is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Amini Innovation Corp.*, 439 F.3d at 1371 (internal quotations marks and citation omitted). "[T]he determination of whether the patented design is dictated by the function of the article of manufacturer must ultimately rest on an analysis of its overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc*., 122 F.3d 1452, 1455 (Fed. Cir. 1997). That said, "a design patent is not invalid if the functional aspect could be accomplished in ways other than the patented design." *Poly-Am., LP. v. API Indus., Inc.*, 74 F. Supp. 3d 684, 689 (D. Del. 2014) (internal quotation marks and citation omitted), *aff'd sub nom. Poly-Am., L.P. v. Api Indus., Inc.*, 617 F. App'x 997 (Fed. Cir. 2015).

In opposition to Gold Crest's motion and in support of their contention that the Design Patents are invalid as functional, defendants advance three arguments. First, they argue that the utility of the Design Patents is evidenced by the fact that the '512 D. Patent has the same effective filing date as Gold Crest's Utility Appl. No. 14/848,078, now abandoned, which claimed a "Portable Multi-Function Light Assembly" that accommodates a "low profile, mobile yet stable desk top light" and provided a "curved section [that] is sized to project the cantilevered portion over a workspace on the support surface (e.g. desk) space forward of [the] base" and "the base can have a comparatively small footprint and still achieve appropriate stability requirements." (Doc. No. 126-8 at 6–7.) Second, the A'Design award identifies the following functional aspects of the Brooklyn LED Task Light: (1) LED panel light technology; (2) touch activated base switch; (3)

space saving base;[18] and (4) base USB ports and base device holder.[19] (*Id.* at 7; Doc. No. 126-3 at 3.) Third, the Spark award identifies the following functional aspects of the Brooklyn LED Task Light: (1) LED panel technology; (2) touch activated/adjustable dimmer; (3) AC and USB port in the base; (4) space saving base; and (5) charging station. (Doc. No. 126-8 at 7–8; Doc. No. 126-4 at 2, 4[20].) The non-illumination features of the Brooklyn LED Task Light identified by the A'Design and Spark awards are also identified on the packaging of the Brooklyn LED Task Light. (*See* Doc. No. 126-7 at 2–6.)

In moving for summary judgment on the issue of functionality, Gold Crest acknowledges its utility patent application, but argues that a desk lamp consists of (1) components that light up, and (2) components that provide power to the components that light up; "[i]n other words, LED bulbs, wiring, and a plug. Pretty much everything else is left to the imagination of the designer." (Doc. No. 126 at 15–16.)

Be that as it may, there is no genuine dispute of fact that the Brooklyn LED Task Light, which is embodied in the Design Patents, consists of more than a desk lamp providing light and contains other features that may be functional as highlighted by the A'Design award and Spark award and the packaging for the Brooklyn LED Task Light, including the base of the lamp, which also acts as a device holder and charging station. The base of the lamp is part of the design in the

---

[18] The A'Design award announcement states: "One of the most challenging obstacles in the realization of the design was ensuring the base of the product maintained its diminutive form while providing adequate support and stability for the light. This challenge was overcome by molding weights inside the base that fit around the electronics in the base, allowing the base to maintain its form while accommodating additional weight and lowering the light's center of gravity." (Doc. No. 126-3 at 3.)

[19] The A'Design award announcement states that the base includes "added functionality in its USB ports[,]" and "USB cords may be used in either USB port and fed through the device holder on the base, which can be used to support charging devices." (Doc. No. 126-3 at 3.)

[20] "The LUX Brooklyn LED Task Light [utilizes] revolutionary LED panel technology [and] incorporates USB ports and an integrated device holder for a light that doubles as an innovative and essential charging station."

'512 D. Patent[21] and is depicted in the patent drawings. (*See* Doc. No. 126 at 6). *Amini Innovation Corp.*, 439 F.3d at 1371 (the drawings in the patent define the patented design); *see also Golo Slipper Co. v. Glass & Fitzgerald Co.*, 14 F. Supp. 786, 787 (D. Mass. 1936) ("the design patent covers the entire design pictured and that the patentee cannot pick out one portion of the patented design and claim that that portion is really the design patented, and hence infringed") (citation omitted).

Gold Crest does not directly address what may be functional aspects of the base in arguing that the Design Patents are not invalid as functional:

> [In addition to Gold Crest's utility patent application], [d]efendant Project Light further references language noting that the "base can have a comparatively small footprint and still achieve appropriate stability requirements" and "the lamppost is attached to the front wall of the base." Lastly, Defendant Project Light notes the language that "the upstanding portion is disposed at a rearward angle and the curved section is sized to project the cantilevered portion over a workspace forward of the base."
>
> All of that is true, but it does mean that function dictated that the lamp must be designed that way. The upstanding portion could have been vertical instead of being "disposed at a rearward angle." The "cantilevered portion" did not need to be cantilevered. Many desk lamps are purely vertical in design. Nor did it need to have a "curved section." Those are ornamental choices by the designer that made the Brooklyn LED Task Light the subject of various awards—not requirements demanded by the function of providing light.

(Doc. No. 126 at 16.)

Gold Crest has not established on summary judgment that there is no genuine issue of material fact that the features of the Brooklyn LED Task Light embodied in the Design Patents, beyond providing light, are not functional or that those features are simply "ornamental choices" not dictated by function. Accordingly, the Court cannot determine as a matter of law that the

---

[21] The '735 D. Patent covers the lamp without the base. (*See* Doc. No. 126 at 6.)

Design Patents are not invalid in their entirety, as functional, or whether the Design Patents contain both functional and ornamental components, the ornamental components of which are entitled to patent protection.

### 4.  Inventorship

In order to obtain a valid patent, all inventors must be named. *In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018) (citations omitted); *W. Plastics, Inc. v. DuBose Strapping, Inc.*, 334 F. Supp. 3d 744, 759 (E.D. N.C. 2018) (under section 102(f) of the pre-AIA patent code, failure to name all of the inventors of a claimed invention renders the patent invalid) (citing among authority *In re VerHoef*, 888 F.3d at 1365); *Ultravision Techs., LLC v. Glux Visual Effects Tech (Shenzhen) Co.*, No. 2:18-cv-99, 2021 WL 3508691, at *3 (E.D. Tex. Apr. 9, 2021) ("A post-AIA patent is invalid if it does not name all inventors.") (citations omitted). "'Inventorship is a mixed question of law and fact: The overall inventorship determination is a question of law, but it is premised on underlying questions of fact.'" *Ultravision Techs., LLC,* 2021 WL 3508691, at *2  (quoting *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004) (further citation omitted)).

That said, because patents are presumed valid, 35 U.S.C. § 282, there is a presumption that the named inventors on a patent are the true and only inventors. *Gemstar–TV Guide Int'l, Inc. v. Int'l Trade Com'n,* 383 F.3d 1352, 1381 (Fed. Cir. 2004) (citing *Hess v. Advanced Cardiovascular Sys., Inc.,* 106 F.3d 976, 980 (Fed. Cir. 1997)). The Design Patents identify the inventors as Roger Edgar of the United States and Leonardus Josephus van Oord of the Netherlands. (*See* Doc. No. 67-1 at 2; Doc. No. 67-2 at 2.)

Defendants contend that all of the inventors of the Design Patents have not been named because the A'Design award for the Brooklyn LED Task Light credits six (6) "team members" as

follows: Armand Van Oord, Roger Edgar, Carolyn Russak, Simon Van Der Hart, Matthew Miller and Barbara Burke. (*See* Doc. No. 126-8 at 8; Doc. No. 126-3 at 3.) The Spark award credits the "team members" as Armand Van Oord, Carolyn Russak,[22] and Michelle Haas. (Doc. No. 126-8 at 8; Doc. No. 126-4 at 2.)

In its motion for summary judgment, Gold Crest argues that there is no evidence that the "team members" identified in the awards satisfy the definition of inventorship. (Doc. No. 126 at 18.) Defendants' opposition brief is silent on this issue and fails to advance any evidence of the criteria for being identified as a team member for a design award or explain how any of the identified individuals satisfy the legal criteria for inventorship of a design patent. Thus, defendants have failed to advance any evidence on summary judgment from which a reasonable jury could find that they established by clear and convincing evidence the inventors identified on the Design Patents are not the true and only inventors as presumed by law.

### E. Infringement

Direct patent infringement is governed by 35 U.S.C. § 271(a), which provides that: "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." Direct infringement is a "strict-liability offense" and the alleged infringer's mental state is irrelevant. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 135 S. Ct. 1920, 191 L. Ed. 2d 883 (2015) (citation omitted).

---

[22] It is unclear from the punctuation in the Spark award announcement whether Van Oord or Russak is credited as the "lead designer." (*See* Doc. No. 126-4 at 2.)

In *Gorham Mfg. Co.*, the Supreme Court "set forth the test that has been cited in many subsequent cases: '[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.'" *Egyptian Goddess, Inc.*, 543 F.3d at 670 (quoting *Gorham Mfg. Co.*, 81 U.S. at 528). "[P]atented and accused designs need not be identical in order for design patent infringement to be found." *Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint., Inc.*, 953 F.3d 745, 751 (Fed. Cir. 2020) (citing *Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 820 (Fed. Cir. 1992)). "The controlling inquiry is how the ordinary observer would perceive the article." *Id.* (citing *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997)); *Egyptian Goddess,* 543 F.3d at 678 (under the ordinary observer test, infringement may be found where the accused article embodies the patented design or a colorable imitation thereof). The Federal Circuit has held that determining infringement of a design patent is a question of fact. *Catalina Lighting, Inc. v. Lamps Plus, Inc*., 295 F.3d 1277, 1287 (Fed. Cir. 2002); *see also Richardson*, 597 F.3d at 1295.

As an initial matter, it is premature for the Court to address Gold Crest's motion for summary judgment on the issue of infringement given that the validity of the Design Patents remains to be determined at trial. But more importantly, the issue of design patent infringement on summary judgment "is a quintessential fact question" that, in this case, cannot be determined as a matter of law. *See Kenu, Inc. v. Belkin Int'l, Inc.*, No. 15-cv-01429, 2018 WL 2445318, at *3 (N.D. Cal. May 31, 2018) (citing *Amini Innovation Corp.*, 439 F.3d at 1371 ("conclusions about

reasonable jurors are difficult to make on an issue of this factual dimension"); *Richardson*, 597 F.3d at 1295 ("[d]esign patent infringement is a question of fact").).

Accordingly, Gold Crest's motion for summary judgment on its claims that defendants directly infringed the Design Patents is denied.

## III. Conclusion

For all the foregoing reasons, Gold Crest's motion for summary judgment is granted in part and denied in part.

(1) Gold Crest's motion for summary judgment is DENIED with respect to the validity of the Design Patents under (i) 35 U.S.C. § 102, (ii) 35 U.S.C. § 103, and as (iii) non-functional.

(2) Gold Crest's motion for summary judgment is GRANTED on the issues of (i) enforceability, and (ii) inventorship.

(3) Gold Crest's motion for summary judgment that defendants infringed the Design Patents is DENIED.

**IT IS SO ORDERED**.

Dated: March 22, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**