UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| GOLD CREST, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>PROJECT LIGHT, LLC, an Ohio Limited Liability Company; PROSPETTO LIGHT, LLC, an Ohio Limited Liability Company; PROSPETTO LIGHTING, LLC, an Ohio Limited Liability Company; SAM AVNY, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE No. 5:19-CV-02921<br><br>THE HON. SARA LIOI,<br>UNITED STATES DISTRICT COURT JUDGE<br><br>*REFERRED TO:*<br>THE HON. CARMEN E. HENDERSON, UNITED STATES MAGISTRATE JUDGE<br><br>**PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS PURSUANT TO FRCP RULES 37, 26, AND 16, AGAINST ALL DEFENDANTS**<br><br>Complaint Filed:  08-12-2019 |

Plaintiff GOLD CREST, LLC, a California Limited Liability Company ("Plaintiff" or "Gold Crest") hereby gives Notice that it is moving for the harshest sanctions against Defendants PROJECT LIGHT, LLC, an Ohio Limited Liability Company ("Project Light"), PROSPETTO LIGHT, LLC, an Ohio Limited Liability Company ("Prospetto"); PROSPETTO LIGHTING, LLC, an Ohio Limited Liability Company ("Prospetto Lighting") (collectively "the 3 Ohio LLC's"); SAM AVNY, an individual ("Avny") (collectively "Defendants"), as Defendants have

spent the past several years successfully gaming the discovery system to avoid providing critical, relevant information about its willfully infringing conduct. To date, Defendants' gamesmanship has included:

- Defendant Avny testified at his February 18, 2022 deposition that all business decisions of the Three Ohio based corporate Defendants are made by his consultant, Mitch Stanley; while Stanley testified in August 2020, that he is **General Counsel and Executive Vice President, and that Defendant Sam Avny** as the sole Defendant all of the Corporate Defendants makes all of the business decisions. (*Compare* Avny Dep Tr. at 19:22-21:25, 46:2-16 and 98:25-99:25 and Stanley 8/27/20 Dep. Tr. at 36:10-37:6 and 71:19-72:16, and Stanley 8/28/20 Dep. Tr. at 164:3-165:4).

- Refusing to provide a full set of order, import, and sales documents that would authenticate the number of lamps sold, despite numerous document requests and a court order requiring same;

- Refusing to provide the tax returns for Defendant Sam Avny when he represented to Magistrate Judge Henderson that defendants would provide them; ***See Page 4, Line 10— page 12, line 25 of February 16, 2022 Hearing Transcript attached to the April 18, 2022 Declaration of Konrad L. Trope ("Trope Decl." as Exhibit "2" filed concurrently herewith and incorporated herein.***

- Representing in their Statement of Interested Parties/Corporate Compliance Statement that Defendant Project Light, LLC was a separate functioning entity, when in fact, all three Defendant LLC's, while listed as "active" on the Ohio  Secretary of State website, are merely inactive subsidiaries of third-party parent corporation, Project Light, Inc., a Florida corporation over which Defendant Sam Avny has had complete ownership,

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

*Compare* Docket Entry #19 with Avny Depo Trans. at 14-15:6.  *See* true and correct copy of February 18, 2022 Avny Deposition attached as Exhibit 2 to the Trope Decl.

- Cycling through five separate counsel to frustrate attempts by Gold Crest from learning critical information, while also repeatedly causing months and months of delays, which the Court has previously found to be inexcusable and,

- Repeatedly signing a knowingly false declarations that all responsive documents had been provided to frustrate Plaintiff's attempts to obtain reliable information from Defendants. *See* Stanley Verification of Defendant's Response dated October 6, 2021, and Defendant's Amended Supplemental Responses dated February 17, 2022 and February 23, 2022, attached as Exhibits "7, 8 and 9" to Trope Decl.

Two years wasted. And now Plaintiff learns that it must file yet again another amended complaint to name the real owners of the defendant companies. Defendants should be sanctioned for their repeated acts of delay, evasiveness, and non-compliance.  Plaintiff asks that the Court award it its fees to this point, the fees for preparing a further complaint, damages, and plus grant leave to add yet unnamed parties Project Light, Inc. ("PL-Florida"), the recently discovered Florida parent corporation of the three Ohio based LLC Defendants, Mitch Stanley, the unlicensed General Counsel, and Martha Avny, who until 18 months ago was the President of PL-Florida.

Plaintiff's Motion will be based upon the attached Memorandum of Points and Authorities, the Declaration of Konrad L. Trope and accompanied Exhibits filed concurrently herewith, all prior pleadings in this case and any such oral arguments or evidence that this court may entertain.

As discussed in detail herein below, there has been and continues to be an intentional,

3

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

willful, fragrant and well documented pattern of discovery misconduct, obfuscation, evasiveness, and misrepresentation by Defendants and their counsel throughout the discovery process of this case and it continues to this very day. Thus, after tolerating these repeated instances of discovery abuse and flouting of discovery rules, Plaintiff sought relief through Rule 37 and telephonic conferences before Judge Lioi and Magistrate Henderson. The findings of those prior conferences has led to Plaintiff being allowed to present this Motion for Sanctions without any further Meet and Confer sessions with Defendants counsel.

Plaintiff is seeking a broad range of sanctions authorized by the relevant case law discussed within the attached Memorandum of Points and Authorities, including but not limited to striking of Defendants' answers and the entry of Judgment in favor of Plaintiff, along with seeking an award of Attorneys' Fees of over $100,000 which fees are documented. Sanction options less drastic are also further discussed in the attached Memorandum with their supporting authorities.

Respectfully submitted,

Dated: April 19, 2022

Kyri S. Tsircou (California SBN 209905)
Konrad L. Trope (California SBN 133214)
   *[Admitted Pro Hac Vice]*
Tsircou Intellectual Property Law PC
515 S. Flower St. Floor 36
Los Angeles, California 90071
Telephone: (323) 660-9916
Facsimile: (323) 660-9917
Email: kyri@tsircoulaw.com
Email: ktrope@tsircoulaw.com

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.  STATEMENT OF FACTS / PROCEDURAL HISTORY ................................................... 1

    A.  Gold Crest Began Its Action Against Project Light Nearly Three Years Ago, and Project Light Has Lied Repeatedly Delayed and Misrepresented, Obfuscated The Start .......... 1

II.  SANCTIONS OPTIONS FOR ABUSE OF DISCOVERY ................................................... 9

III.  CONDUCT OF DEFENDANTS JUSTIFYING IMPOSITION OF SANCTIONS AND ATTORNEY FEES ............................................................................................................. 12

    A.  Project Light And Its Entities Refuse To Comply With Written Discovery Requests. . 12

        1.  *Defense is in possession of discovery which they have failed to produce or production has been partial or incomplete.* ............................................................... 12

        2.  *Mr. Avny is responsible for production of all documentation is his possession as defined in FRCP Rule 34.* ............................................................................................ 17

        3.  *Defendants have shown little to no effort to attempt to comply with discovery requests.* 19

        4.  *Defendants repeatedly provided incomplete and evasive answers.* ................................ 22

        5.  *Defendants have continued to defy Court Orders and violate the Code of Civil Procedure.* ............................................................................................................. 24

    B.  Project Light And Its Entities Repeatedly Made Fraudulent Statements. ...................... 26

        1.  *Defendants have provided court documents containing false statements.* ..................... 26

        2.  *Defendants provided statements which appear fraudulent because of their contradictions.* ............................................................................................................. 28

    C.  Defendant Sam Avny and His Various Entities Continue to Intentionally Engage in Conduct Causing Delays. ............................................................................................... 29

IV.  SANCTIONS AGAINST DEFENSE COUNSEL ............................................................ 34

V.  PLAINTIFF GOLD CREST HAS BEEN IRREPARABLY DAMAGED BY DEFENDANTS' REFUSAL TO ABIDE THE RULES OF CIVIL PROCEDURE .................... 38

VI.  ATTORNEYS' FEES ........................................................................................................ 39

VII. CONCLUSION ................................................................................................................. 40

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Airtex Corp. v. Shelley Radiant Ceiling Co.*
   536 F.2d 145 (7th Cir.1976)...................................................................... 12, 23, 31

*Badalamenti v. Dunham's Inc.*
   118 F.R.D. 437 (E.D.Mich.1987)..................................................................... 11

*Bass v. Jostens, Inc.*
   71 F.3d 237 (6th Cir.1995).......................................................................... 10

*Bell v. Automobile Club of Michigan*
   80F.R.D. 228 (E.D.Mich.1978).................................................................... 12

*Bratka v. Anheuser-Busch Co.*
   164 F.R.D. 448 (S.D.Ohio 1995) .......................................................... passim

*Chambers v. NASCO, Inc.*
   501 U.S. 32, S.Ct.2123, 115 L.Ed.2d 27 (1991) .......................................... 12

*Design Strategy, Inc. v. Davis*
   469 F.3d 284 (2d Cir.2006)........................................................................ 41

*Freddie v. Marten Transport, Ltd.*
   428 Fed. Appx. 801 (10th Cir.2011) ....................................................... 11, 40

*Harmon v. CSX Transportation, Inc.*
   110 F.3d 364, 368-9 (6th Cir.1997) ............................................................ 10

Jackson v. Nissan Motor Corp.
   No. 88-6132, 1983 WL 128639, at *5............................................... 11, 23, 31

*Jones v. Illinois Central R.R. Co.*
   617 F.3d 843 (6th Cir.2010)....................................................................... 36

*Laukus v. Rio Brands, Inc.*
   292 F.R.D. 485 (2013) ........................................................................ passim

*Link v. Wabash R.R.*
   370 U.S. 626, S.Ct. 1386, 8 L.Ed.2d 734 (1962) ................................... 12, 25

*Metz v. Unizan Bank*
   655 F.3d 485 (6th Cir.2011) ...................................................................... 12

*National Hockey League v. Metropolitan Hockey Club*
   427 U.S. 639S.Ct. 2778, 49 L.Ed.2d 747 (1976) ......................................... 9

*Peltz v. Moretti*
   No. 292 Fed.Appx. 475 (6th Cir.2008) (internal citation ............................ 10

*Qualcomm Inc. v. Broadcom Corp.*
   2008 WL 66932, at *13 n. 9 (S.D.Cal. Jan. 7, 2008) .................................. 39

*Reg'l Refuse Sys. v. Inland Reclamation Co.*
   842 F.2d 150 (6th Cir.1988)...................................................................... 10

*Roadway Express, Inc. v. Piper*
   447 U.S. 752, S.Ct. 2455, 65 L.Ed.2d 488 (1980) ...................................... 12

*United States v. Moss-American, Inc.*
   78 F.R.D. 214 (E.D.Wis.1978).................................................................. 12

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

*United States v. Reyes*
    307 F.3d 451 (6th Cir.2002) ................................................................................. 11
*Valley Eng'rs Inc. v. Electric Eng'g Co.*
    158F.3d 1051 (9**th** Cir.1998) ...................................................................... 10, 40
*Wittman v. Wilson*
    95 Fed.Appx. 752 (6th Cir.2004) ....................................................................... 40

**Statutes**
28 USC § 1746 ......................................................................................................... 28

**Rules**
Federal Rule of Civil Procedure 26 .......................................................................... 37
Federal Rule of Civil Procedure 26(g) ..................................................................... 36
Federal Rule of Civil Procedure 26(g)(3) ................................................................. 37
Federal Rule of Civil Procedure 34 .......................................................................... 19
Federal Rule of Civil Procedure 37(b)(2)(A)(v) ...................................................... 10
Federal Rule of Civil Procedure 37(c)(1) ................................................................. 37
Federal Rule of Civil Procedure 37(d) ..................................................................... 11
Federal Rule of Civil Procedure 41(b) ..................................................................... 25
Rule 26(e)(2) ............................................................................................................ 37
Rule 34(b)(2)(B) ....................................................................................................... 25
Rule 37(d) ........................................................................................................... 11, 12

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**     <u>**STATEMENT OF FACTS / PROCEDURAL HISTORY**</u>

      A.     <u>Gold Crest Began Its Action Against Project Light Nearly Three Years Ago, and Project Light Has Lied Repeatedly Delayed and Misrepresented, Obfuscated The Start.</u>

Plaintiff Gold Crest is the owner of design patent No. US D769,512 ("'512) Design Patent") and design patent No. US D787,735 ("'735 Design Patent"). A true and correct copy of the '512 Design Patent and a true and correct copy of the '735 Design Patent are found at Docket Entries Nos. 01-1 and 01-2.

After sending out two Cease & Desist Letters to Defendant Project Light and exchanging multiple emails between May 2017 and May 2019, Plaintiff was forced to file this instant action on August 12, 2019 in the United States District Court for the Central District of California solely against Defendant Project Light, LLC, an Ohio Limited Liability Company ("Project Light").

By the time the case was transferred to Ohio, and with Defendant Project Light filing its Answer to Plaintiff's Complaint on January 28, 2020, Defendant Project Light was on its **Third Set of Attorneys.** *See* Docket Entry Nos. 14, 30, 31, 40, 41, 42, 45, and 46.

Moreover, Project Light commenced ignoring Document Requests, Requests for Admissions and Deposition Notices that were served in March and April 2020, which resulted in its **Third Set of Counsel**, withdrawing on April 22, 2020. See Docket Entry No. 60. Project Light then passively refused to obtain counsel for over **three (3) months.** Only after Plaintiff brought three Motions to Compel, in June 2020, did Project Light finally retain its **Fourth Set of Counsel,** who belatedly appeared in late July and asked for time to respond to the various

1

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

motions, contributing further to the delays in this case. *See* Docket Entry Nos. 76-95. Ultimately, Project Light was compelled to respond to the Document Requests, and produce its "in house" general counsel/Executive Vice President, Mitch Stanley, for his deposition.[1]

At that time, the Court deferred on the issue of attorneys' fees being imposed against Defendant Project Light, while admonishing Project Light that its delay tactics were not well received. *See* Minute Orders of July 8, 2020 and July 27, 2020. By this time, Plaintiff had added Defendants Sam Avny, Prospetto Light, LLC (an Ohio LLC), and Prospetto Lighting, LLC (an Ohio LLC), as Doe Defendants, upon learning from various public record filings that Defendant Sam Avny was the owner/managing member of each of the listed corporate defendants.

This **Fourth Set of Counsel** lasted barely six months**.** After Counsel #4 Mitch Stanley, Project Light's V.P. and General Counsel, was shepherded through a deposition full of evasive answers and refused to provide full responses (Konrad add more). On February 25, 2021, Defendants' **Fourth Set of Counsel** filed motions to withdraw. *See Docket Entry Nos. 106, 108.*

It was not until April 19, 2021, nearly two months later that Defendants' current and **Fifth Set of Counsel** appeared in this case. *See* Docket Entry No. 125.  At the Telephonic Status Conference held on April 19, 2021, the Court again noted that numerous "discovery issues caused by defendants" and the frequent changing of counsel had caused unacceptable delays. *See* April 19, 2021 Minute Order [Non-Document].

Moreover, the Court noted that a key unresolved discovery issue germane to its resolution was the number of units of infringing lamps sold by Defendants. *Id.* This question has been dodged and avoided by Defendants since March of 2020 when initial discovery requests were

---

[1] Mr. Stanley has been suspended from the practice of law since 2009 by the Ohio Supreme Court.

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

served by Plaintiff.  This sidestepping by Defendants has thus, not only delayed the case, but made it impossible for trial preparations or for settlement discussions to take place.

In September of 2021 Plaintiff served Requests for Admission, Set No. One and Requests for Production of Documents, Set No. One on Defendants Prospetto Light, LLC, Prospetto Lighting, LLC, and Sam Avny.  On or about October 6, responses were served which were nothing more than evasive, and vague answers with and contradictions implying a lack of candor in the discovery responses.

In particular, despite the fact that Sam Avny is the President of all of the corporate Defendants in this matter (who has testified that he is either the Managing Member or the Owner of the 3 named Corporate Defendants) gave responses were in complete violation of Rule 34. Indeed, for each and every response Mr. Avny stated through counsel,

> "no documents exists.  San Avny, individually, maintains no operational
> documents or communication of his own."

*See* Defendants' Responses to Plaintiff's First Set of Request of Production of Documents, attached as Exhibit "7" to Trope Decl. dated October 6, 2021.

Yet these documents being sought dealt with emails and other documents related to the very three (3) companies he owns and for which he is the Managing Member or is the President and/or Sole Owner.

It should also be noted that there is no signed verification from Mr. Avny.  Instead, his attorneys both sign off on these responses, bringing into question whether or not Rule 11 has been violated.  *See* true and correct copy of Defendant's Responses to Plaintiff's First Set of Request of Production of Documents attached as Exhibit "7" to the Trope Decl.

Furthermore, Requests for Production of Documents were also served on Corporate

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Defendants Prospetto Light, LLC and Prospetto Lighting, LLC.  And again, every response or almost every response states

> "No documents exists, Prospetto Light, LLC maintains no operational documents or communications of its own and is a non-operating entity that is a predecessor in interest to Project Light Inc."

*See* Defendant's Responses to Plaintiff's First Set of Request of Production of Documents, attached as Exhibit "7" to Trope Decl. dated October 6, 2021.

*It should also be noted* that in violation of Rule 34 which calls for a separate response to the request from each party, counsel for Defendants stated that Defendant Prospetto Light, LLC and Prospetto Lighting, LLC are "jointly responding herein".  One would have to then assume from that response that both corporate entities that despite being listed as active entities with the Ohio Secretary of State are allegedly both been succeed by or taken over by Project Light, Inc. This corporation has only recently been identified as a potential Defendant in this matter after two and a half years for which is in complete contradiction to the Certificate of Interested Parties filed in this case herein. *See* Defendants' Responses to Plaintiff's First Set of Request of Production of Documents and Statement of Interested Parties, attached as Exhibits "7" and "17" to Trope Decl. Corporate Defendant's did the same gameplaying with respect to their Responses to Requests for Admissions. Since Defendant Mr. Avny is the president, according to corporate records and testimony, President, or Managing Member, or Owner of the all the Corporate Defendants as well as Owner of Project Light, Inc., a Florida Corporation, providing documents should not have been difficult. As will be discussed more fully herein below.

Furthermore, Defendant Avny apparently refused to sign a verification and instead had Mitch Stanley, who has testified in this case claiming to be Vice-President and General Counsel.

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

*See* Exhibit "7" to Trope Decl. containing Stanley's verifications to the October 6 discovery response. What makes the verification questionable if not fraudulent is that Mr. Stanley now identifies as a Corporate Consultant, not as a Vice-President and General Counsel of the Defendants as he previously testified in his deposition in August of 2020. (See Stanley 8/27/21 Dep. Tr. at 41:9). Moreover, within the verification, Mr. Stanley now identifies himself as a Manager of Project Light, Inc., Prospetto Light, LLC, and Prospetto Lighting, LLC, currently named Corporate Defendants.

Mr. Stanley as the Manager does not appear on any corporate records that have been provided to us or are available to us through the Secretary of State. So the verification begs the question who is Mitch Stanley: is he the Vice-President and General Counsel of these Corporate Entities, is he a Corporate Consultant, or is he a Managing Member as described in the verification. *See* Stanley's verification, attached as Exhibit "7" to Trope Decl. He certainly can't be all three. This kind of gamesmanship has been the pattern in practice of Defendants throughout this case.

On December 9, 2021, Plaintiff Gold Crest propounded over 100 new and additional Requests for Production of Documents to Defendant Sam Avny, and over 100 Requests for Production of Documents via Subpoena Duces Tecum to related third-party Non-Defendant Project Light, Inc., a Florida corporation, over which Defendant Avny has complete control.

This Second Set of Document Requests sought several categories of documents including, but not limited to:

1)      Documents that confirm the number of units of the Brooklyn USB lamp, D63 Desk Lamp, Model No. 77002 lamp or variations thereof which were: sold; manufactured in China for Defendants or their affiliates; manufactured in the

5
PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

United States for Defendants or their affiliates; distributed by Defendants or their affiliates; or imported by Defendants or their affiliates,

2)  Federal tax records for the years 2015 through 2020,

3)  Documents relating to lamps Defendants displayed at the HD Expo (a trade exposition) in Las Vegas for calendar years 2015 through 2020,

4)  Documents pertaining in any way to sales of any and all desk lamps by non-party Project Light, Inc. (a Florida Corporation), for calendar years 2017 through 2020,

5)  Documents pertaining in any way to desk lamps purchased, imported, sold, manufactured, or distributed by non-party Project Light, Inc. bearing Model Nos. Brooklyn USB, D63 Desk Lamp, or 77002 for the calendar years 2015 through 2020, and

6)  Non-party Project Light, Inc.'s tax records from 2015 through 2020.

In a tardy response to these requests for production of documents, Mitch Stanley, Project Light's General Counsel and Executive Vice President issued the following one paragraph statement on behalf of Defendant Sam Avny, to whom the document requests were directed:

> "In response to each and every document request directed to Sam Avny that are numbered as Request Nos. 51 – 161, Defendant, Sam Avny, hereby responds that no responsive documents exist that are in his possession, care, custody, or control. Sam Avny, individually, does not maintain documents or communications in his own right, which would be separate or different from any and all documents that are in Defendant Project Light's possession, care, custody, and control, all of which said documents have already been produced to Plaintiff by Project Light."

*See* Exhibit "6" to Trope Decl.

Furthermore, Mr. Stanley attached a verification to the responses declaring that: "[a]ll of the facts stated in this Declaration are made on [his] personal knowledge; he is "competent to testify to the matters contained herein"; he is "a manager of the limited liability company (LLC)

6

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

party-Defendants, Project Light, LLC, et al."; that he "reviewed the Defendant Sam Avny's responses to Plaintiff's Second Set of Requests for the Production of Documents directed to Sam Avny"; and he "attest[s] to the truth and accuracy to the responses thereto under penalty of perjury, 28 USC § 1746." Stanley then signed the verification on behalf of "Defendants, Project Light, and Sam Avny." *See* Stanley's Verification, attached as Exhibit "7" to Trope Decl., or Docket Entry No. 156 at Page 2.

In response to this one paragraph response issued on behalf of Defendant Avny, Plaintiff Gold Crest, **once again,** was forced on February 6, 2022, to seek a Telephonic Discovery Conference under Rule 37.1. *See Docket Entry Nos. 148 and 149.* As part of its request for this Telephonic Discovery Conference, Gold Crest identified no less than **six** legal and factual inadequacies of Defendant Avny's response to Plaintiff's 110 document requests:

1) Mr. Avny's statement that he has no responsive documents in his possession care, custody, or control is simply false as he is the sole owner of the companies;

2) The document requests seek documents from corporate non-party Project Light, Inc. of which Mr. Avny is the sole shareholder and the President;

3) The documents sought involve each of the three Ohio Limited Liability Company Defendants, not just Defendant Project Light, LLC as the response states;

4) The requests for documents by Plaintiff also seek personal documents of Mr. Avny, such as his federal tax returns for the past five years;

5) This Second Set of Document Requests to Mr. Avny do not duplicate the First Set of Document Requests, nor do they duplicate any prior document requests to Defendant Project Light. Therefore, Mr. Avny's response is patently wrong in claiming that all of the requested documents were previously produced; and

7

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

6)      The response provided by Mr. Avny violates the mandates of Rule 34(b)(2)(B) which requires a separate response to each request, not a singular blanket response covering all of Plaintiff's document requests.  *See* Docket Entry No. 149 at pages 1-2.

Magistrate Judge Henderson then held an initial Telephonic Discovery Conference on February 15, 2022. *See Docket Entry No. 153.* During this Initial Discovery Conference, it was represented by Defendants Counsel, repeatedly, that the Three Ohio based Defendant LLC's, which are 100% owned and managed by Defendant Sam Avny, are essentially inactive shells, despite being listed as active with the Secretary of State and that the true parent corporation is third-party Project Light, Inc., a Florida corporation, over which Defendant Sam Avny is the sole shareholder and officer. This was the first time that this information was ever provided, which totally contradicts the Statement of Interest Parties filed by Defendants at Docket Entry No. 19.

During the subsequent Rule 37-1 Telephonic Conference held by the Magistrate Judge on February 16th, 2022, the telephone conference the Court ORDERED as follows:

- Defendant Avny shall respond to Document Request Nos. 93-95 no later than NOON on February 17, 2022, [*because his repeatedly delayed deposition was finally scheduled to take place on Friday, February 18, 2022 in Miami, Florida] emphasis and annotation added.* This response shall be a full and adequate response that includes the responsive documents and identifies the bates numbers that correspond with each individual request. Where there are no responsive documents, Defendant must affirmatively state so and identify the steps taken to discover the requested documents.

- Defendant Avny shall respond to the remainder of the document request no later than February 23, 2022. This response shall be a full and adequate response that includes the responsive documents and identifies the bates numbers that correspond with each individual request. Where there are no responsive documents, Defendant must affirmatively state so and identify the steps taken to discover the requested documents.

- Responses and documents produced shall be provided via electronic means such

8

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

as a cloud link so that Plaintiff's counsel can access them over the internet.

*See* Docket Entry No. 156 at Pages 3-4.

Additionally, the Court noted that the February 3, 2022 verification of Defendant Avny's Responses was signed by Mitch Stanley, a manager of the corporate defendants, all of which are controlled by Avny. *Id.* Yet, during the Rule 37.1 Telephonic Discovery Conference held with Magistrate Judge Henderson on February 16, 2022, Defendant Avny represented that these companies are inactive; thus, indicating that Stanley is the manager (or Executive Vice President) of inactive companies. Avny also represented that he was present as the party representative of the corporate defendants. Accordingly, the Court furthered ordered that the responses include a verification and declaration signed by Defendant Avny on behalf of himself as he is the party to whom the requests were directed. *Id.*

## II.   <u>SANCTIONS OPTIONS FOR ABUSE OF DISCOVERY</u>

The Federal Rules of Civil Procedure set forth the discovery obligations of parties and their attorneys and authorize federal courts to impose sanctions on those participants who fail to meet these obligations. "In selecting a sanction under Rule 37, a court may properly consider both punishment and deterrence." *Bratka v. Anheuser-Busch Co.,* 164 F.R.D. 448, 459 (S.D.Ohio 1995) (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)); *see also Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (2013) **(Lioi, J.)**; *see Peltz v. Moretti*, No. 292 Fed.Appx. 475, 478 (6th Cir.2008) (internal citation and quotation omitted); *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir.1995). The burden to prove that the failure to comply with discovery obligations was the result inability and not due to willfulness, bad faith, or fault rests with the sanctioned party. *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir.1988).

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Rule 37(b)(2) provides the imposition of sanctions for the failure to obey a court order to produce or permit discovery. The rule also recites a partial list of sanctions available to the district court that finds a discovery abuse. Fed.R.Civ.P. 37(b)(2)(A)(v).  Courts have upheld the sanctions of dismissal of an action or a defense under this rule for a variety of discovery abuses tied to a failure to comply with a discovery order, including: withholding relevant documents from discovery, not planning, and executing an effective search for responsive documents, and lying at deposition. *See,* e.g., *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (2013) **(Lioi, J.)**; *Valley Eng'rs Inc. v. Electric Eng'g Co.,* 158F.3d 1051, 1054-56(9th Cir.1998) (dismissal appropriate where defendants withheld the "smoking gun" document); *Harmon v. CSX Transportation, Inc.,* 110 F.3d 364, 368-9 (6th Cir.1997) (dismissal proper where party willfully failed to fully respond to discovery requests); *Freddie v. Marten Transport, Ltd.,* 428 Fed. Appx. 801, 804 (10th Cir.2011) (dismissal as sanction for willfully withholding highly relevant evidence and providing false deposition testimony); *Bratka*, 164 F.R.D. at 460 (default judgment on liability against defendant appropriate where defendant failed to make a good faith effort to provide the required discovery by neglecting to make an effective search for responsive documents).

Federal Rule of Civil Procedure 37(d) represents yet another avenue for sanctions. Rule 37(d) provides that the Court may, upon motion, impose sanctions if a party fails to respond after being properly served with Requests for Production of Documents or provides vague and evasive answers during a deposition. Such sanctions may include any of those listed in Rule 37(b)(2)(A)(i)-(vi), including dismissal. See *United States v. Reyes*, 307 F.3d 451, 457-58 (6th Cir.2002).  Indeed, the "majority view authorizes Rule 37(d) sanctions when a party's 'evasive or incomplete answers to proper interrogatories [or deposition questions or document requests]

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

impede discovery.'" *Jackson v. Nissan Motor Corp*., No. 88-6132, 1983 WL 128639, at *5, 1989

U.S.App. LEXIS 16348, at *14 (6th Cir.1989) (quoting *Badalamenti v. Dunham's Inc*., 118

F.R.D. 437, 439 (E.D.Mich.1987)); *Airtex Corp. v. Shelley Radiant Ceiling Co*., 536 F.2d 145,

155 (7th Cir.1976) ("when, as here, the fact that answers to deposition questions or request for

production are evasive or incomplete answers are tantamount to no answer at all … Rule 37(d) is

applicable"); with approval in *Laukus*, 29F.R.D. at 502. **(Lioi, J.)**.

     In addition to the rule-based authority, federal courts have the inherent power to impose

sanctions to prevent the abuse of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S.

32, 43-46, 111 S.Ct.2123, 115 L.Ed.2d 27 (1991); *Link v. Wabash R.R.*, 370 U.S. 626, 629-30,

82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (federal trial courts have the inherent power to manage their

own dockets).  A court may exercise its inherent power to sanctions when a party has "acted in

bad faith, vexatiously, wantonly, or for oppressive *503 reasons," or when the conduct was

"tantamount to bad faith."  *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6ᵗʰ Cir.2011) (citing

*Chambers*, 501 U.S. at 45-46, 111 S.Ct. 2123; *Roadway Express, Inc. v. Piper,* 447 U.S. 752,

767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); see, e.g., *United States v. Moss-American, Inc.*, 78

F.R.D. 214, 216 (E.D.Wis.1978) ("it is within the inherent equitable powers of this court to

dismiss an action when a just determination of the action has been seriously thwarted by a

plaintiff's willful misconduct")).

     Yet additional counsel have not aided Defendants' discovery woes. Upon discovery of

additional defendants, Gold Crest subsequently served discovery on these additional entities. *See*

Requests for Production served on Defendant Avny, attached as Exhibits "4" and "6" to Trope

Decl. After extensions on responding, Defendants served a single inadequate response to over

dozens of different requests for documents, arguing that Avny lacked possession or control of

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

any of these documents. Gold Crest challenged those inadequate responses, leading to the instant dispute.

## III.    CONDUCT OF DEFENDANTS JUSTIFYING IMPOSITION OF SANCTIONS AND ATTORNEY FEES

    A.    <u>Project Light And Its Entities Refuse To Comply With Written Discovery Requests.</u>

Despite several court orders, repeated requests from Plaintiff, and even admissions by Defendant Avny that certain documents exist, Defendants have continued to refuse to comply with discovery requests. There has been a constant and intentional pattern of failure to produce documents, failure to produce complete documents, failure to follow the code, and providing incomplete and evasive responses.

    *1.    Defense is in possession of discovery which they have failed to produce or production has been partial or incomplete.*

Mr. Avny has continued to refuse production of (1) documents that must exist as part of his businesses, (2) documents Mr. Avny has testified exist, (3) communications between the Defendants and any third parties (Chinese manufacturers, purchasing company, freight company, etc.), and (4) documents mentioned in emails between Mr. Avny and Project Light employees. Failing to produce a single document listed is tantamount to withholding the "smoking gun" as any one of these documents could be imperative to the question of willful infringement. The Court has determined that sanctions, including dismissal and attorney fees, are appropriate where defendants withheld the "smoking gun" document. *See Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 501 (2013); *Valley Eng'rs Inc. v. Electric Eng'g Co*., 158 F.3d 1051, 1054–56 (9th Cir.1998).

12

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Certain documents that must exist haven't been produced: i.e., there have been no productions of any CAD designs sent to a lamp manufacturer (as would be necessarily required to actually make the product), or documents reflecting discussions of pricing and quantities between the manufacturer and any Project Light entity, let alone a final count of how many of the desk lamps were manufactured, how many were imported, how many were sold, and who purchased them.

Indeed, there is a continued failure to supply documents pertaining in any way to desk lamps purchased, imported, sold, manufactured, or distributed by non-party Project Light, Inc. bearing Model Nos. Brooklyn USB, D63 Desk Lamp, or 77002 for the calendar years 2015 through 2020.

Furthermore, Mr. Avny has admitted to the existence of certain documents, yet has failed to provide them. Mr. Avny stated that a purchasing company, an importer, and a forwarding company were all involved in at least one transaction related to the desk lamp. (*See* Avny Dep Tr. at 64:24-65:13, 69:5-19, and 126:23-129:16). Yet the only documentation produced were an invoice and packing list from IBT Trading, Inc., and a bill of landing from Longsail USA. What is conspicuously missing are any contracts, communications, or documentation required of these third parties by law.

There is also a glaring lack of documentation relating to the design and specifications. Mr. Avny states that the project manager and the engineer regularly correspond with the designer: "I'm sure there's plenty correspondence between them then. Every item they develop there's a lot of correspondence." Avny Dep Tr. at 94:15-22. *See* Exhibit "2" to Trope Decl. Even going further to clarify "If we make a drawing, we will send it to the purchasing company. They send the designer. The designer will make comment, give it to the purchasing company, give it to

13

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

us. … I've been told there's correspondence between Paul through the agency, the designer, that even the designer insisted several times to make exactly …:" (*See* Avny Dep Tr. at 95:9-96:2) See Exhibit "2" to Trope Decl. Yet none of these documents have been produced despite repeated requests.

In the September 8, 2019 email Mr. Avny asked who sent the specs and if the product was within the patent. (*See*, September 4, 2019 Avny Email, Exhibit "10" to Trope Decl.). Avny indicated that he received a response to these questions and even stated: "So I'm sure I got response from them. Because my broken English, I did all in the e-mails. I'm sure that somebody respond to me with the specs." (*See* Avny Dep Tr. at 78:7-81:10). *See* Exhibit "2" to Trope Decl. Yet this response is conveniently missing from the email chain, and no other documentation has been provided that answers either question. When questioned further, Mr. Avny states that the specs were sent by "Beyer Brown, the purchasing agent." Avny Dep Tr. at 81:9. *See* Exhibit "2" to Trope Decl.  But again, Defendants have failed to produce any communications with Beyer Brown, let alone the actual specs.

When asked about Jerry Flauto, Mr. Avny stated: "If I would communicate with Jerry, it would be only by e-mail." (*See* Avny Dep Tr. at 83:13-23). *See* Exhibit "2" to Trope Decl.  Avny has admitted to only communicating with Mr. Flauto via email, but again, without producing said emails.

In addition, emails between Mr. Avny and Project Light employees mention the existence of certain documents, yet Avny claims ignorance: Proof of Delivery for containers; specifications from purchasing company; quotes requested by Marriot; and instructions from designers.  (*See, Emails*; Exhibit "10" to Trope Decl.  *See also* Avny Dep Tr. at 71:6-8, 86:17-25, 88:2-4, 89:18-20, 92:16-19). *See* Exhibit "2" to Trope Decl.

14

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

5469350.1

Even with the little documentation provided, it is not complete. In regard to the chain of documentation for getting the products from China to their end point, Avny claims that the packing list from IBT Trading, Inc. should contain everything, but if it doesn't, "[t]hat information will provide in the project manager file. You will see all the route from China up to the final destination and decide -- every project manager will have a track of every movement to there, if he's done correctly his job." Avny Dep Tr. at 105:6-17. The packing list does not detail "the route from China up to the final destination," (*See*, IBT Trading Packing List; Exhibit "11" to Trope Decl., and no further documentation was provided as part of a supposed project manager file.

Project Light has produced several copies of the same purchase orders for its infringing lamp to a Marriott hotel in Tennessee. (See, Purchase Orders, Exhibit "12" to Trope Decl). Yet, when Anvy was asked where the hotel in question was located, he "had no idea." (*See* Avny Dep Tr. at 65:14-24). *See* Exhibit "2" to Trope Decl.  When further questioned if there was only one hotel property, he again "had no idea." (*See* Avny Dep Tr. at 65:25-66:1). *See* Exhibit "2" to Trope Decl. This cannot be accepted as an answer because Mitch Stanley, Project Lights V.P. testified that Avny runs everything. (*See* Stanley 8/27/20 Dep. Tr. at 36:10-37:6 and 71:19-72:16, and Stanley 8/28/20 Dep. Tr. at 164:3-165:4). *See* Exhibit "2" to Trope Decl. So here again is another instance of stonewalling by Defendants.

There have been ZERO documents produced evidencing communications between Project Light (any of the entities) and its Chinese manufacturer, only recent unauthenticated communications have been produced that are demonstrably in response to this litigation. (*See, e.g.*, Project Light 362; Exhibit "14" to Trope Decl.). We've only received a single apparent self-serving declaration drafted purportedly by the Chinese manufacturer on February 12, 2022.

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Even when Avny is questioned about this statement, he admits he doesn't recognize the document, nor know what it is. (*See* Avny Dep Tr. at 61:22-63:2). Prior to this time, despite several interrogatories and requests for production of documents drawn to that topic, Plaintiff would not even name the Chinese manufacturer. (*See* Project Light 360, attached as Exhibit "14" to Trope Decl.). To this day, despite admitting that Project Light imports lamps from other manufacturers, Avny continues to refuse to name any other Chinese companies he has done business with. (*See* Avny Dep Tr. at 66:21-67:21). *See* Exhibit "2" to Trope Decl.

Sam Avny continues to fail to produce his personal tax returns for past 5 years as ordered by Court (ECF 156, p. 3). Sam Avny personally attested that prior to this Court's hearing on February 16, 2022 that "my tax return[s] were already produced, they're already sent, maybe my attorney does not see them yet, but they [were] already produced and sent."  February 16, 2022 Hearing Tr. at 10:10-10:14, attached as Exhibit "1."  Furthermore, Avny stated during his deposition on February 18, 2022 that he "produced all the documents to my attorney," then clarifies that it was not done personally by him, but rather Mike Tillett, his CPA, and that he has never actually looked at the tax documents. (*See* Avny Dep Tr. at 34:21-35:16). *See* Exhibit "2" to Trope Decl. Yet, Avny continues to attest, without any actual personal knowledge, that "[w]hatever I was required, I produced." Avny Dep Tr. at 35:8. *See* Exhibit "2" to Trope Decl.

In *Laukus v. Rio Grande, Inc.*, the Court issued sanctions for the intentional concealment of just one "smoking gun" document. Yet here, discovery responses have been so lacking that the number of proverbial "smoking gun" documents is unknown. Not one relevant and mandatory document has been produced by Defendants, therefore the actual extent of Defendants unacceptable conduct is unknown. Yet, there is more than enough evidence of Defendants failure to comply with Discovery Requests that sanctions are appropriate.

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

2.  *Mr. Avny is responsible for production of all documentation is his*

*possession as defined in FRCP Rule 34.*

Defendants have attempted to argue that Mr. Avny has provided all the documentation in

his possession. But Avny has repeatedly deferred all responsibility to others:

- A. The project managers "have a record of all the transaction and items that we do. I do not have them." (*See* Avny Dep Tr. at 67:22-68:3)
- Q. No, but you were asked to obtain all the documents, sir, not Mr. Mats.
- A. We -- I obtained all what the project managers gave us. (*See* Avny Dep Tr. at 75:12-15)

- A. I've been told there's correspondence between Paul through the agency, the designer, that even the designer insisted several times to make exactly -- even Paul was not so happy with it. But that, you need to talk to Paul Mats. He will give you more information about it. (*See* Avny Dep Tr. at 94:22-96:2)

- Q. And do you have any documents that show -- confirm this changeover in ownership? A.  I'm sure that Mitch Stanley have it. (*See* Avny Dep Tr. at 99:17-99:19)

- Q. Who else would have turned documents over to Mr. Welling?
- A. I turn over only the tax return documents. I don't know about the others.
- Q. So you don't know how any of the other documents -- what the source material is -- who provided the other documents that were –
- A. I don't know exactly what are the other documents. (See Avny Dep. Tr. At 52:8-16)

- Q. But you own Prospetto Lighting, LLC?
- A. I said that I'm not sure. I don't remember.
- Q. Well, would it surprise you if Mr. Stanley stated that you're the owner?
- A. I would not be surprised. He know much better than me.
- Q. And why does he know better than you?
- A. He's the consultant. He deal with this -- he see those documents. (*See* Avny Dep Tr. at 26:25-26:8)

- Q. You checked with the project managers? I thought you said you -- and that the project managers do -- handle these transactions, not you?
- A. They -- they finalize, yes, the transactions, and they have a record of all the transaction and items that we do. I do not have them. The only way for me to know is to ask them, which I did.
- Q. And when did you ask them? A. Now. Recently. (*See* Avny Dep Tr. at 67:22-68:5)

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

5469350.1

- Q. Personally, what efforts did you yourself make to collect these documents?
- A. I spoke to Mitch Stanley on the phone and instructed him to collect all efforts – documents related to this request. (*See* Avny Dep Tr. at 56:22-57:1)

Despite Mr. Avny's insistence that others are responsible for providing requested documents, under FRCP Rule 34, when a request for documents is made to a person, that person must produce any and all documents within their custody, care, and control. This means, as the President or CEO of these companies, Mr. Avny is obligated to use his authority to obtain those documents. Avny declaring that he does not personally have them, does not alleviate him from the obligation to produce them.

While Mr. Avny testifies that Mr. Stanley effectively runs and operates each of his businesses, Mr. Stanley deferred and said he merely takes directions from Mr. Avny as to all business-related operations. Stanley 8/27/20 Dep. Tr. at 36:10-37:6 and 71:19-72:16. *See* Exhibit "3" to Trope Decl.  Defense has respectfully provided contradictory testimony over who runs Project Light, LLC. Per Sam Avny, it is all operated by Mitch Stanley. (*See* Avny Dep Tr. at 19:22-21:25, 46:2-16 and 98:25-99:25). Yet Stanley says its Mr. Avny. (*See* Mitch Stanley Dep. Tr. Vol. II at 164:3-165:4 (denying operational knowledge of Project Light and explaining he reports to Avny's)). Neither can provide a straight answer as to who runs and maintains the business (or even who does sales).

It is not Mr. Stanley's responsibility to ensure the production of these documents. Mr. Avny hired Mr. Stanley, Avny gave Stanley authority to sign checks, and Avny "gave [Stanley] instruction to do the best job as he" could. (*See* Avny Dep Tr. at 19:19-24, 27:9-14, and 46:3-23). *See* Exhibit "2" to Trope Decl. Even after Mr. Stanley's titled changed in 2022 Stanley was still not a shareholder or owner of Project Light, and therefore not the person ultimately responsible for production of documents under FRCP Rule 34.

18

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Moreover, Mr. Avny has maintained a repeated and systemic effort to frustrate Gold Crest's attempts at discovering who actually owns and operates his businesses. (*See* Avny Dep Tr. at 19:22-21:25, 46:2-16 and 98:25-99:25; *see also* Mitch Stanley Dep. Tr. Vol. II at 164:3-165:4 (denying operational knowledge of Project Light and explaining he reports to Mr. Avny)).

       3.      *Defendants have shown little to no effort to attempt to comply with discovery requests.*

In addition to Defendant's lack of production, there is a blatant lack of effort to even attempt to comply. Sanctions are appropriate for multiple discovery abuses, including "not planning and executing an effective search for responsive documents." *Laukus,* 292 F.R.D. at 501 (2013) (*citing Bratka*, 164 F.R.D. at 460 (default judgment on liability against defendant appropriate where defendant failed to make a good faith effort to provide the required discovery by neglecting to make an effective search for responsive documents)).

When asked what efforts have been taken to comply with the February 2022 Court Order, Mr. Avny made the following statements:

- Q. No, but you were asked to obtain all the documents, sir, not Mr. Mats.
- A. We -- I obtained all what the project managers gave us.
- Q. Did you speak to Jenni Collier this week?
- A. No.
- Q. Have you spoken to her in the last two weeks?
- A. About this project, no. (*See* Avny Dep Tr. at 75:12-19)

- Q. So did you speak to all of your project 4 managers when -- after the Court ordered you to produce documents this week?
- A. No.
- Q. Who did you speak to regarding complying with the court order?
- A. Mitch Stanley.
- Q. And only Mr. Stanley?
- A. Yes. (*See* Avny Dep Tr. at 76:3-11)

- Q. Did you discuss with Mr. Stanley complying with this court order?

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

5469350.1

- A. Not really -- not really.
- Q. Sir, yes or no?
- A. Yes.
- Q. When did you last speak to Mr. Stanley?
- A. I spoke to him ten minutes ago.
- Q. Good. And what did -- in your prior calls with him this week, did you authorize him to -- what did you tell him about this court order?
- A. To provide whatever they need.
- Q. And what was -- what did Mr. Stanley tell you?
- A. He said, "Sure. Why not?"
- Q. And that was the -- that was your entire conversation regarding this court order?
- A. Yes. (*See* Avny Dep Tr. at 52:17-53:8)

- Q. Who else would have turned documents over to Mr. Welling? A. I turn over only the tax return documents. I don't know about the others.
- Q. So you don't know how any of the other documents -- what the source material is -- who provided the other documents that were –
- A. I don't know exactly what are the other. (*See* Avny Dep Tr. at 52:8-52:16)

- Q. So what steps did you cause -- or did you take to comply with Document Requests 93 and 95?
- A. I asked Mr. Tillett to provide me all the information that was requested and -- (*See* Avny Dep Tr. at 53:9-53:12)

- Q. So you didn't personally review Document Requests 93, 94, and 95? 15
- A. I follow up and I asked the people that need to provide it, to provide it. (*See* Avny Dep Tr. at 53:13-53:16)

- Q. Personally, what efforts did you yourself make to collect these documents?
- A. I spoke to Mitch Stanley on the phone and instructed him to collect all efforts – documents related to this request.
- Q. Did you speak to anyone else regarding complying with Requests 93, 94, and 95? A. No.
- Q. So you spoke to no one else at -- up in Ohio? You didn't speak to counsel?
- A. No. Regard these points, no. Only to Mitch Stanley. (*See* Avny Dep Tr. at 56:22-57:23)

- Q. So when's the last time -- when did you speak to any project manager regarding the desk lamp at issue in this case?
- A. I spoke to Karen several days ago.
- Q. And what did Karen tell you?
- A. That she provided all documents, and if we asked, she would provide it again. She didn't remember exactly what documents.

20
PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

- Q. And before then you hadn't asked her to provide any documents?
- A. I think a year ago when was -- that issue was in the reach -- or I asked to provide -- I'm not sure if I spoke to her a year ago about it. I don't know why a year ago. (*See* Avny Dep Tr. at 68:10-68:23)

Indeed, Mr. Anvy states that the project managers handle "the transactions, and they have a record of all the transaction and items that we do." (*See* Avny Dep Tr. at 67:22-68:3). Both Mr. Avny and Mr. Stanley stated repeatedly that their only response to the written document requests was to request documents from the project managers. (*See* Stanley Dep Tr. at 55:20-25; 57:19-23; 59:13-17; 64:20-65:12, and 113:2-14). Yet, no one can seem to decide who the project manager on this project was. Mr. Avny indicates that the project manager was Karen Banfield (*See* Avny Dep Tr. at 66:3-11, 67:15-68:23 and 78:7-81:10). Whereas Mr. Stanley and multiple email chains indicate that the project manager was Jenni Collier. (*See* Stanley Dep Tr. at 55:20-25; 57:19-23; 59:13-17; 64:20-65:12, and 113:2-14; September 4, 2019 email chain, attached as Exhibit "10" to Trope Decl.). Which begs the question: where are the files from the project managers? Why have they not yet been produced despite repeated requests and a court order?

Furthermore, Defendants have indicated that there are multiple other parties who may have pertinent documentation yet have admittedly never sought their assistance in complying with the discovery requests. According to Mr. Avny, the only people he spoke to regarding the discovery requests were Mr. Stanley, Karen Banfield, and Mr. Tillet. Mr. Stanley testified that the only people he reached out to regarding the discovery requests was Jenni Collier and Paul Mats. Yet, Kathy McPeak is the shipping warehouse manager (*See* Avny Dep Tr. at 70:25-71:8, Exhibit "2 to Trope Decl.); and there are emails from a Violet and Robert who apparently work as Defendants' agents in China (*See* Avny Dep Tr. at 71:9-72:3, Exhibit "2" to Trope Decl.), and

Mr. Avny admits to not speaking to any of the other project managers (*See* Avny Dep Tr. at 76:3-11).  *See* Exhibit "2" to Trope Decl.

The Court in *Bratka* found default judgment an appropriate sanction as the Defendant had failed to make an effective search for responsive documents, and therefore failed to make a good faith effort to comply with the discovery requests. *Bratka*, 164 F.R.D. at 460. Mr. Avny's failure to even attempt to retrieve the responsive documents is indicative of the lack of a good faith effort, and in fact, indicates an intentional bad faith effort to conceal and withhold documents.

4.      *Defendants repeatedly provided incomplete and evasive answers.*

During Mr. Avny's deposition, he provided vague answers, refused to fully answer questions, was combative with Plaintiff's counsel, and attempted to avoid answering by telling counsel to ask someone else. The "majority view authorizes Rule 37(d) sanctions when a party's 'evasive or incomplete answers to proper interrogatories [or deposition questions] impede discovery.'" *Laukus,* 292 F.R.D. at 501 (2013) (*citing Jackson v. Nissan Motor Corp*., No. 88–6132, 1989 WL 128639, at *5 (6th Cir.1989)). Indeed, evasive, or incomplete discovery responses are deemed by courts as "tantamount to no answer at all… [and thus] Rule 37(d) applicable. *Laukus v. Rio Brand*, 292 F.R.D. at 502 (Lioi, J.) quoting with approval "*Airtex Corp v. Shelley Radiant Ceiling Co*., 536 f.2d 145, 155 (7th Cir. 1976).

Even when asked about his own companies, Mr. Avny continuously gave the answer "I have no idea" or "I don't know." (*See* Avny Dep Tr. at 15:8-16:9, 27:15-28:8,). Not only did Mr. Avny provide vague answers, but on three separate occasions refused to provide appropriate answers to the point that Plaintiff's counsel had to move to strike as unresponsive. (*See* Avny Dep Tr. at 27:15-28:8, 56:18, and 96:9-97:4).

When questioned about email chains which Mr. Avny was a part of, Avny attempted to avoid answering by telling counsel to ask someone else or feigning ignorance. (*See* Avny Dep Tr. at 109:24-110:18, 111:24-112:6).

At one point, Mr. Avny was asked about the Boutique Design New York trade show and what happens at said trade show. Mr. Avny spent ***five*** (5) pages of the transcript where almost every response was that the purpose was to "say hello." (*See* Avny Dep Tr. at 113:2-117:23). This exchange was then followed by another three (3) pages of transcript where Mr. Avny's counsel jumps in to argue about answering what happens at a trade show. (*See* Avny Dep Tr. at 117:5-119:23). Then when questioned about the Las Vegas Show, Mr. Avny spent three more (3) pages of transcript stating that Project Light was there "to say hello." (*See* Avny Dep Tr. at 119:25-122:16).

In *Laukus,* during the plaintiff's deposition, he claimed to not remember significant details, or did not know the whereabouts of highly relevant documents. *Laukus,* 292 F.R.D. at 504 (2013). The Court found that the "plaintiff has been playing a calculated game of 'hide the ball' since the beginning of this litigation, and has been using a variety of ploys, including misdirection and temporary amnesia, to cover his tracks." *Laukus,* 292 F.R.D. at 504 (2013). Similarly, in the instant case, Mr. Avny's apparent memory loss as to which businesses he owns, what the purpose of trade shows are, and numerous other details pertaining to questions asked during his deposition, is incredible and can only be interpreted as providing false deposition testimony in an attempt to avoid discovery.

The Court in *Laukus* also determined that given the plaintiff's attempts to "thwart any effort by defendants to discover material evidence, his actions are tantamount to a total and complete failure to prosecute this case in good faith." *Laukus,* 292 F.R.D. at 505 (2013) (*citing*

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

*Sexton v. Uniroyal Chem. Co.,* 62 Fed.Appx. 615 (6th Cir.2003) (affirming dismissal of action under Rule 41(b) for failure to prosecute and for failure to comply with discovery orders); *see also Link,* 370 U.S. at 629, 82 S.Ct. 1386 (citing Fed.R.Civ.P. 41(b) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."))

     5.    *Defendants have continued to defy Court Orders and violate the Code of Civil Procedure.*

On February 3, 2022, Mitch Stanley responded to Plaintiff's Second Set of Requests for the Production of Documents directed to Sam Avny, with a one paragraph statement on behalf of Defendant Sam Avny, Said response contained no less than **six** (6) legal and factual inadequacies, including violation of Rule 34(b)(2)(B) which requires a separate response to each request, not a singular blanket response covering all of Plaintiff's document requests.

Along with this blatant rule violation, the response was entirely inadequate. As discussed above, Mr. Avny is required to produce any documents in his "possession," which includes any documents from his companies as he is the sole owner/shareholder. Furthermore, the requests also seek Mr. Avny's federal tax returns for 2015-2020. Mr. Avny is required by law to file federal tax returns, and therefore must be in possession of them, yet he failed to produce them.

Additionally, Mr. Avny's response claims that all of the requested documents were previously produced, yet the Second Set of Document Requests to Mr. Avny do not duplicate the First Set of Document Requests, nor do they duplicate any prior document requests to Defendant Project Light. Finally, the Court ordered Mr. Avny to provide a verification and declaration signed by Defendant Avny on behalf of himself with his responses.

The Court Order issued on February 16, 2022, after the hearing on February 16, 2022,

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

required Defendant's to respond to "Document Request Nos. 93-95 no later than NOON on February 17, 2022." (*See* Docket Entry No. 156 at Pages 3-4.). Document Request Nos. 93-95 include Mr. Avny's personal tax returns.

During Mr. Avny's February 18, 2022, deposition, Avny stated that he "did everything he could" and "[e]verything was done per request." (*See* Avny Dep Tr. at 50:15-51:23, Exhibit "2" to Trope Decl.). Yet, as discussed above, Mr. Avny has still failed to produce his personal tax return for the years 2015-2020. Even in the event that there are no responsive documents, Mr. Avny has failed to "affirmatively state so and identify the steps taken to discover the requested documents." Docket Entry No. 156 at Page 3.

Mr. Avny also admitted that other than forwarding the tax return documents to his counsel, Avny did not know about the other documents, who supplied them, or what they were. (*See* Avny Dep Tr. at 51:25-52:16). Mr. Avny's only attempt to provide the requested documents was to tell "Mitch Stanley to collect all the documentation related to that from the people." (*See* Avny Dep Tr. at 52:17-54:25). Avny did not read the requests, he did not go over the requests with Mr. Stanley or Counsel and was only "generally" aware of what the requests were. (*See* Avny Dep Tr. at 56:22-57:23). This falls drastically below any standard of compliance with the Courts Order, or even attempt at compliance.

The Court Order issued on February 16, 2022, also required that Mr. Avny "respond to the remainder of the document request no later than February 23, 2022." Docket Entry No. 156 at Page 3-4. Yet the last responsive documents received from Mr. Avny were on February 23, 2022. To this day, Mr. Avny remains unresponsive to the remainder of the document requests, or the responses are incomplete and inadequate.

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

B.  <u>Project Light And Its Entities Repeatedly Made Fraudulent Statements.</u>

1.  *Defendants have provided court documents containing false statements.*

Mitch Stanley's response to Plaintiff's Second Set of Requests for the Production of Documents directed to Sam Avny, contains several false statements.

Stanley states that "no responsive documents exist that are in [Avny's] possession, care, custody, or control." (*See,* Stanley's Discovery Response; Exhibit "6" to Trope Decl.). This is false because under Rule 34, as President and CEO of the corporate defendants, he has the ability to direct others to obtain the documents.

Stanley also states that Mr. Avny maintains no documents, that all documents are in Defendant Project Light's possession, and "all of which said documents have already been produced to Plaintiff by Project Light."." (*See,* Stanley's Discovery Response; Exhibit "6" to Trope Decl.). Again, Mr. Avny's federal tax returns have never been produced, and said tax returns would also be documents Avny maintains separately from Defendant Project Light's documentation. Furthermore, this Second Set of Document Requests to Mr. Avny do not duplicate the First Set of Document Requests, nor do they duplicate any prior document requests to Defendant Project Light. Therefore, Mr. Avny's response is patently wrong in claiming that all of the requested documents were previously produced.

Mr. Stanley provided a verification with his response to Plaintiff's Second Set of Requests for the Production of Documents directed to Sam Avny, which contains several false statements, even though Stanley he "attest[s] to the truth and accuracy to the responses thereto under penalty of perjury, 28 USC § 1746." *See* Docket Entry No. 156 at Page 2.

Mr. Stanley declared that: "[a]ll of the facts stated in this Declaration are made on [his] personal knowledge." Yet, how can he attest to the personal knowledge about what documents

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Mr. Avny does or does not maintain.

Mr. Stanley also declared that he is "a manager of the limited liability company (LLC) party-Defendants, Project Light, LLC, et al." *See* Docket Entry No. 156 at Page 2. Yet, during the Rule 37.1 Telephonic Discovery Conference held with Magistrate Judge Henderson on February 16, 2022, Defendant Avny represented that these companies are inactive. How can Mr. Stanley sign as the manager of inactive companies and where does his authority to sign come from? Even the Magistrate was not satisfied with Mr. Stanley's verification and required a new one to be provided, signed by Mr. Avny. *See* Docket Entry No. 156 at Page 2.

Defendants filed a Statement of Interested Parties/Corporate Compliance stating that the Three Ohio LLC's were each separately functioning entities. (*See* Docket Entry No. 19). When in fact, all Three Ohio LLC's, while listed as "active" on the Ohio Secretary of State website, are merely inactive subsidiaries of third-party parent corporation, Project Light, Inc., a Florida corporation. (*See* Avny Depo Trans. at 14-15:6 and Docket Entry No. 153).

During the Initial Discovery Conference, Defendants Counsel repeatedly represented that the Three Ohio based Defendant LLC's, are essentially inactive shells, despite being listed as active with the Secretary of State and that the true parent corporation is third-party Project Light, Inc.

Furthermore, a letter dated February 14, 2022, to Martha Avny and that was included with Mrs. Avny's tax returns, read: "Enclosed is your 2018 Ohio investor summary, which has been filed with a 2018 form, IT 4708, annual composite income tax return for investors and pass-through entities of Project Light Inc.." (Exhibit "16" to Trope Decl.).  It would therefore follow that all Three Ohio LLCs are merely pass-through entities of third-party Project Light, Inc.

Defendants filed Initial Invalidity and Unenforceability Contentions on February 3, 2022, arguing that the patents at issue in the present case are invalid and unenforceable. *See* Docket Entry No. 147. This document was signed by David A. Welling on behalf of the Defendants, including Mr. Avny. Yet, Mr. Avny testified at his deposition that he has never seen this document, has never discussed the contents with counsel, did not authorize anyone to create this document, and when asked if he was aware that through counsel, Avny as a defendant was challenging the validity of plaintiff's patents, Avny stated "I didn't challenge that." (*See* Avny Dep Tr. at 47:4-48:11 and 49:18-50:7).

Therefore, Defendant's Initial Invalidity and Unenforceability Contentions were either filed falsely, or Mr. Avny testified falsely. Defense counsel cannot file a document on behalf of the Defendants, and yet the Defendants completely contradict the statements made or are simply unaware of the document's existence.

> 2.    *Defendants provided statements which appear fraudulent because of their contradictions.*

Sam Avny personally attested that prior to this Court's hearing on February 16, 2022 that "my tax return[s] were already produced, they're already sent, maybe my attorney does not see them yet, but they [were] already produced and sent." Feb. 16, 2022 Hearing Tr. at 10:10-10:14, attached as Exhibit "1" to Trope Decl. However, the 2018 tax returns produced were not even filed until February 14, 2022.

Defendant Avny represented that the three Ohio LLCs are inactive and claims to have no knowledge of whether he is the owner of each or not. (*See* Avny Dep Tr. at 19:22-21:25, 46:2-16 and 98:25-99:25). Conversely, Mr. Stanley states that Avny is and always has been the owner of each. (*See* Stanley Dep Tr. at 19:22-21:25). Additionally, it has been shown that Martha Avny,

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

until recently, was actually listed as the sole shareholder and officer of Project Light, Inc. (*See* Avny Depo Trans. at 14-15:6; Ohio Secretary of State, Articles of Organization, Exhibits "17" through "20," inclusive, to Trope Decl.).

Defense has also provided contradictory testimony over who runs Project Light, LLC. Per Sam Avny, it is all operated by Mitch Stanley. (*See* Avny Dep Tr. at 19:22-21:25, 46:2-16 and 98:25-99:25) While Mr. Avny testifies that Mr. Stanley effectively runs and operates each of his businesses, Mr. Stanley deferred and said he merely takes directions from Mr. Avny as to all business-related operations. (*See* Stanley 8/27/20 Dep. Tr. at 36:10-37:6, 71:19-72:16 and Stanley Dep. Tr. Vol. II at 164:3-165:4). Neither can provide a straight answer as to who runs and maintains the businesses.

Contradictory Discovery Responses are essentially evasive responses, worthy of sanctions under Rule 38. See *Laukus v. Rio Brands, Inc.*, at 292 F.R.D. at 502-503 (2013); citing with approval *Jackson v. Nissan Motor Corp* at *5 (6th Circuit, 1989); *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d at 155 (7th Cir.1973).

C.     Defendant Sam Avny and His Various Entities Continue to Intentionally Engage in Conduct Causing Delays.

The instant action was filed on August 12, 2019, in the United States District Court for the Central District of California solely against Defendant Project Light. As of the date of this motion, it has been two (2) years and eight (8) months since filing, and the parties have still yet to complete discovery. Defendant's conduct has consistently caused delays, forced the filing of a multiple Rule 37 of motions, wasted the Court's time, and caused attorney fees to climb higher and higher.

Throughout the almost three-year period that the instant action has been ongoing,

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Defendants or their counsel have delayed due to the unavailability of Mr. Avny. Plaintiff's counsel began requesting deposition dates for Mr. Avny in early 2021. As this was in the middle of COVID lock downs, some delays in setting deposition delays may be attributed to the pandemic. Nevertheless, Plaintiff's counsel could not get deposition dates for Avny, even by Zoom.

In the Fall of 2021, travel restrictions were being lifted and Plaintiff's counsel again asked for deposition dates. The response given was "we have reached out to our client … and we are awaiting a response." *See* September 23, 2021 email, Exhibit "21" to Trope Decl. A set of dates was then provided by Defendants' Counsel for mid-November 2021, with the request that they be by videoconference, or in Boca Raton. *See* September 28, 2021 email, Exhibit "22" to Trope Decl. Mr. Trope responded that the deposition needed to take place in person, in Ohio. To which Mr. Welling's response was "Are you sure you'd rather come to Ohio in November rather than south Florida??" *See* October 1, 2021 email, Exhibit "23" to Trope Decl. No dates were ever provided for an Ohio Deposition.

After receiving no response, Plaintiff's counsel reached out on November 2, 2021, again requesting Mr. Avny's availability in November 2021. Mr. Welling responded a week later stating only: "I apologize for the delay in responding - I am getting a date certain for that now. Stay tuned." *See* November 9, 2021 email, Exhibit "24" to Trope Decl.

After not receiving any dates again, Plaintiff's counsel set the deposition date in Cleveland, Ohio for December 13, 2021, booked airline tickets, made hotel reservations, and scheduled a court reporter. The Notice of Deposition was served on November 24, 2021, yet Defendant's counsel waited until December 2, 2021, to claim:

"He (Mr. Avny) insists the deposition be conducted via videoconference (in light

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

of the resurgence of new Covid strains), or, if it must be done in person, he will sit

for a deposition in Florida where social distancing can be observed. Mr. Avny is

over 60 and understandably does not wish to take the unessential risk of flying to

Ohio during this pandemic resurgence." *(See* December 2, 2021 Email, Exhibit

"25" to Trope Decl.).

Another deposition date was set for January 2022 and again. Plaintiff's counsel booked

airline tickets, but three days before the deposition was scheduled, Defendant's counsel canceled.

*(See* January 6, 2022 Email, Exhibit "26" to Trope Decl.). Defendant's counsel stated that "Mr.

Avny is beyond uncomfortable sitting for a deposition next week. Given the omicron variant, he

presently isn't leaving his house." *Id*. Yet, per Mr. Avny's own deposition testimony, he was

flying back and forth to Sri Lanka during this time.

It was at this point that Plaintiff's counsel set a status conference where the Court

admonished Mr. Avny through counsel for his actions and that there could be no more delays.

*(See* Docket Entry *)*. Only after this did Plaintiff's counsel fly to Florida and get Mr. Avny's

deposition on February 18, 2022.

Despite his professed health concerns, Defendant Avny traveled to Sri Lanka in

December 2021 and January 2022 simply to "enjoy the sun." (See Avny Dep Tr. at 39:14-

40:23.). Mr. Avny's health concerns which would not allow him to come to Cleveland, were a

total misrepresentation and fabrication designed to further delay the case.

In addition to the flagrant dismissal of any attempts to get Mr. Avny's deposition, the

revolving door of attorneys hired by Mr. Avny have caused immense delays. Each time a new

attorney was brought on, they had to ask for time to get caught up and request extensions for any

pending deadlines including amending and extending the Court's Case Management Plan. See

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

5469350.1

Docket Entries 139, July 8, 2020 Minute Order; and April 19, 2021 Minute Order.

Plaintiff served the complaint in this action on Defendant on September 4, 2019. Plaintiff then filed three (3) Stipulation's to Extend Time to Respond to Initial Complaint *(See* Docket Entry 11-17), until Defendant found counsel in late October 2019.

Kevin McBride and Brock F. Wilson of Akin Gump Strauss Hauer & Feld LLP, (Counsel #1) were the original counsel in California whose first appearance was in late October 2019. Less than one month later, Mr. Avny informed them that he intended to find new counsel and Counsel requested to withdraw on December 13, 2019. *(See* Docket Entry 30).

Enoch Liang and Dat Nguyen of LTL Attorneys LLP (Counsel # 2) were installed as substitute counsel on December 23, 2019. After only fifteen (15) days, they subsequently withdrew as counsel on January 7, 2020, as soon as the case was moved to the Northern District of Ohio. *(See* Docket Entry 40 and 46).

Cheryl Farine (Counsel #3), filed a notice of appearance on January 14, 2020. *(See* Docket Entry 45). Just over three (3) months later, Farine filed a Motion for Leave to Withdraw on April 22, 2020, citing her reason as "an irreconcilable breakdown in the attorney-client relationship." *(See* Docket Entry 60). Farine developed an ethical dilemma when pressed for a deposition with Stanley, thereby leading to her motion to withdraw as counsel in March of 2020. Minutes said she has announced her withdrawal as counsel of record and indicated that she has an ethical conflict. (*See* Trope Decl. at para. 29).

After Counsel #3 withdrew, there was a three (3) month gap where Defendants intentionally delayed retaining new counsel. Defendants failed to respond to any discovery and didn't hire new counsel until the Court ordered it. *See* Docket Entry No. 74. That necessitated Plaintiff to file the motions to compel responses, requests for production of documents, and

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Mitch Stanley's appearance and deposition. The Court ordered Defendants to get counsel, Stanley had to sit for deposition, and they were told to produce documents.

Ray L. Weber (Counsel #4) appeared in response to the Sanctions sought within the Motions to Compel on July 01, 2020. The Court deferred the issue of sanctions and attorney's fees, stating counsel should meet and confer to agree on attorney's fees for Defendants to pay Plaintiff's counsel.

During a conference call in July 2020, Weber refused to stipulate to any kind of attorney fees or sanctions in response to Plaintiff's Motion to Compel. See Trope Decl. at ¶ 27. At this point, Plaintiff's counsel again started pressing for production of documents in response to RFP #1 and to schedule a deposition date with Mr. Avny. Weber withdrew soon after, on February 25, 2021, claiming a conflict with the client. *(See* Docket Entry 106). The timing of Weber's withdrawal can only be interpreted as Mr. Avny again refusing to produce documents in response to RFP #1 and scheduling a deposition date.

Current counsel, David Welling, (Counsel #5), was brought in on April 19, 2021 *(See* Docket Entry 125), telling Plaintiff's counsel and the Court that they were committed to getting a settlement offer and requesting time to get up to speed on the case, again. In September 2021, Mr. Welling, again, stated that they have reached out to Mr. Avny in regard to a settlement, and are waiting on a response. *See* September 23, 2021 Email, Exhibit "21" to Trope Decl. Yet Mr. Welling never followed up with said settlement offer.

However, Mr. Welling's co-counsel admitted Mr. Gugliotta at the January 18, 2022 status conference that a settlement offer would not be forthcoming.

IV.    **SANCTIONS AGAINST DEFENSE COUNSEL**

Defendants Counsel have contributed to the incomplete discovery requests, fraudulent court documents, and intentional delays and should also be sanctioned. Each of Defendant's current counsel should be subject to sanctions for the following actions:

• knowingly offered (or allowed to be offered) vague and evasive discovery responses designed to thwart defense counsel's ability to engage in meaningful discovery;

• knowingly offered (or allowed to be offered) arguments before this Court that were not supported by—and contrary to—the record;

• failed to make a reasonable effort to discover and produce evidence responsive to discovery requests;

• failed to correct discovery responses they knew to be inaccurate, misleading or false; and

• failed to correct deposition testimony offered by their client that they knew to be false.

The Federal Rules of Civil Procedure set forth the discovery obligations of parties ***and their attorneys***, and authorize federal courts to impose sanctions on those participants who fail to meet these obligations.

In addition to the sanctions options discussed above, the "Federal Rule of Civil Procedure 26(g) requires an attorney or the party personally to certify that discovery responses and objections are supported by nonfrivolous argument and are not aimed to harass, cause delay, or drive up litigation costs. The rule requires a court to impose sanctions for any violation occurring without 'substantial justification.'" *Jones v. Illinois Central R.R. Co.,* 617 F.3d 843, 854 (6th Cir.2010) (citing Fed.R.Civ.P. 26(g)). The signature of counsel or his client certifies that to the best of the "person's knowledge, information and belief formed after a reasonable inquiry" the discovery

response is complete, correct, and interposed for a proper purpose. *Id.* The Advisory Committee
Notes for Rule 26 explain:

> Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible
> manner that is consistent with the spirit and purposes of Rules 26 through 37. In addition,
> Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition
> of sanctions. The subdivision provides a deterrent to both excessive discovery and
> evasion by imposing a certification requirement that obliges each attorney to stop and
> think about the legitimacy of a discovery request, a response thereto, or an objection.
> The term "response" includes answers to interrogatories and to requests to admit as well
> as responses to production requests.

Fed.R.Civ.P. 26 Advisory Committee Notes (1983 Amendment). The attorney's signature
"certifies that the lawyer has made a reasonable effort to assure that the client has provided all the
information and documents available to him that are responsive to the discovery demand." *Id.*

"If a certification violates [Rule 26] without substantial justification, the court, on motion
or on its own, must impose an appropriate sanction on the signer, the party on which behalf the
signer was acting, or both. The sanction may include an order to pay the reasonable expenses,
including attorney's fees, caused by the violation." Fed.R.Civ.P. 26(g)(3). In addition, if a party,
without substantial justification, fails "to amend a prior response to discovery as required by Rule
26(e)(2)," the court may prevent that party from using that evidence at trial or at a hearing and
impose other appropriate sanctions, including the payment of attorney's fees. Fed.R.Civ.P.
37(c)(1).

Current Defense counsel have repeatedly served and signed multiple sets of discovery with blatantly evasive or incomplete responses. *See* Exhibits "4," "6," "8," and "9" to Trope Decl.

During the Initial Discovery Conference, it was represented by Defendants Counsel, repeatedly, that the Three Ohio based Defendant LLC's, which are 100% owned and managed by Defendant Sam Avny, are essentially inactive shells, despite being listed as active with the Secretary of State and that the true parent corporation is third-party Project Light, Inc., a Florida corporation, over which Defendant Sam Avny is the sole shareholder and officer. *See Docket Entry No. 153.* This was the first time that this information was ever provided despite the absence of an updated Statement of Interested Parties reflecting the additional DOES Defendants. See Trope Decl. at ¶ 28.

Current Defense counsel also failed to ensure the Defendants were aware of discovery requests and properly responded. Avny admits in his own deposition testimony that he did not read the recent discovery requests, that he did not go over the requests with Mr. Stanley or current Counsel and was only "generally" aware of what the requests were. (*See* Avny Dep Tr. at 56:22-57:23). This falls drastically below any standard of compliance with the Court's Order, or even with an attorney's duty under Rule 26(g) or Rule 16. See *Laukus v. Rio Brands, Inc.,* 292 F.R.D. at 501-502 (2013). Furthermore, any arguments made by Defense counsel that the discovery requests were properly responded to, is knowingly false. Additionally, any documents signed by Defense counsel indicating the accuracy of the discovery response, was also knowingly false.

As part of Defendant's Response to Plaintiff's Second Set of Requests for Production of Documents directed to Sam Avny, Defense Counsel allowed Mitch Stanley to respond with a one paragraph statement on behalf of Defendant Sam Avny. Said response contained no less than

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

**six** (6) legal and factual inadequacies. It took the Court ordering the filing of an amended response for Defense Counsel to attempt to correct the response. *See* Docket Entry No. 6.

Defendants filed Initial Invalidity and Unenforceability Contentions on February 3, 2022, arguing that the patents at issue in the present case are invalid and unenforceable. *See* Docket Entry No. 147. This document was signed by David A. Welling on behalf of the Defendants, including Mr. Avny. Yet, Mr. Avny testified at his deposition that he has never seen this document, has never discussed the contents with counsel, did not authorize anyone to create this document, and when asked if he was aware that through counsel, Avny as a defendant was challenging the validity of plaintiff's patents, Avny stated "I didn't challenge that." (*See* Avny Dep Tr. at 47:4-48:11 and 49:18-50:7).

Defendants serve an Amended Supplemental Responses to Plaintiff's Request for Production of Documents (Exhibit "9" to Trope Decl.). As part of the "Response," it states: "There are no documents that relate to component parts. Any and all defendants in this matter have no manufacturing or production capability whatsoever …." This document was signed by David A. Welling on behalf of the Defendants, including Mr. Avny. Yet, again, Mr. Avny states that he has never seen this document, he did not contribute to the words chosen, and has never discussed the document with counsel. (*See* Avny Dep Tr. at 47:4-48:11 and 49:18-50:7).

In *Laukus*, the Court approved sanctions against one attorney when it was shown "that he did very little to ensure that he was in possession of all relevant documents and other evidence before responding to discovery." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 506 (2013) (Lioi, J.). The Court further stated that due to "his woefully inadequate attention to discovery, the consequence he now faces is that his conduct is subject to sanctions under Rule 16(f), Rule 26(g), Rule 37(b) and (d), and the Court's inherent powers." *Id.*

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

Again, the Court in *Laukus*, approved sanctions against a second attorney when "he made no effort to ensure that his client's discovery responses were correct. He also sat through both of plaintiff's depositions and … did not attempt to correct what he should have known to be false and misleading testimony …." *Id.*

Furthermore, the Court stated that "[h]e had an affirmative duty to correct the record but failed to do so. His apparent decision to abdicate all responsibility for discovery to [other counsel] does not relieve him of his duties as counsel of record and an officer of the court." *Id. (citing Qualcomm Inc. v. Broadcom Corp.,* 2008 WL 66932, at *13 n. 9 (S.D.Cal. Jan. 7, 2008) ("the Court believes the federal rules impose a duty of good faith and reasonable inquiry on all attorneys involved in litigation who rely on discovery responses executed by another attorney").

## V.     **PLAINTIFF GOLD CREST HAS BEEN IRREPARABLY DAMAGED BY DEFENDANTS' REFUSAL TO ABIDE THE RULES OF CIVIL PROCEDURE.**

As a result of the discovery misconduct, for three years, have been deprived for five years of their right to discoverable evidence which they could have used on summary judgment, on appeal, in mediation, and in pre-trial motions before this Court. In addition, the inability to discover highly relevant information and documents has impaired their ability to prepare the case.

Courts have found prejudice where concealment of relevant documents has impeded a party's ability to fully discover an issue. *See,* e.g., *Valley Eng'rs*, 158 F.3d at 1058 (dismissal of appellant's claims was proper where appellant concealed "smoking gun" document, noting that "a party's discovery violations [may] make it impossible for a court to be confident that the parties will have access to the true facts"); *Tech. Recycling*, 186 Fed.Appx. at 636 (citing *Wittman v. Wilson*, 95 Fed.Appx. 752, 754 (6th Cir.2004) ("In addition to the costs imposed on

defendants, plaintiffs also prejudged defendants by impairing their ability to prepare a defense."")); *see also Freddie v. Marten Transport*, 428 Fed.Appx. 801, 804 (10th Cir.2011) (internal citation and quotation omitted) ("The withholding of evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation."); *Bratka*, 164 F.R.D. at 460 (concealment of relevant documents "threatened the reliability of the fact-finding process").

Plaintiff has extracted from Avny's deposition several additional witnesses to depose and several potential defendants to add to this case, which information was obviously known THREE YEARS AGO, when this case was first filed. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir.2006) (finding prejudice to defendants where discovery would have to be reopened). For all intents and purposes, in light of the newly revealed evidence, the case would need to start from the beginning to afford defendants further opportunity to conduct discovery and, if appropriate, file dispositive motions. Even if the Court were to permit this, given the duplicitous conduct exhibited by Mr. Avny to date, the Court is not confident that Mr. Avny will fully comply with his discovery obligations. This factor also weighs heavily in favor of dismissal.

## VI.    **ATTORNEYS' FEES**

Going to the length of this motion, Plaintiff would request that if the Motion is granted that it be allowed to file a separate application for reasonable attorneys' fees and expenses. See *Laukus v. Rio Brands, Inc.* 229 F.R.D. at 513. Reasonable attorneys' fees and expenses relating to these discovery disputes, going back to March of 2020, are estimated at being over $125,000.

///

///

///

PLAINTIFF GOLD CREST'S MOTION FOR SANCTIONS

5469350.1

## VII.    <u>CONCLUSION</u>

For all of the foregoing reasons Plaintiff requests that this Motion be granted in its

entirety.

Respectfully submitted,

Dated:  April 19, 2022

Kyri S. Tsircou (California SBN 209905)
Konrad L. Trope (California SBN 133214)
  *[Admitted Pro Hac Vice]*
Tsircou Intellectual Property Law PC
515 S. Flower St. Floor 36
Los Angeles, California 90071
Telephone: (323) 660-9916
Facsimile: (323) 660-9917
Email:  kyri@tsircoulaw.com
Email:  ktrope@tsircoulaw.com

5469350.1